## INSURANCE COMPANY *v.* RODEL.

1. By a policy upon the life of A., for the benefit of his wife, an insurance company promised to pay her a certain sum, "for her sole and separate use and benefit, ninety days after due notice and satisfactory evidence of the death of the said A., and of the just claim of the assured (or proof of interest, if assigned or held as security), under this policy, has been received and approved by the company." *Held,* that the words "just claim of the assured" have reference to her claim or title to the policy, and not to the justness of her cause of action thereon.

2. A fact, disclosed by the proofs of the death of the insured furnished to the company, which might be set up as a defence to a suit on the policy, does not derogate from their sufficiency, nor bar the bringing of such suit.

3. Where a policy provides that it shall be void if the insured shall "die by his own hand," the court should not take from the jury, as insufficient to sustain a recovery, evidence tending to show that he was insane when he committed the act which caused his death. The weight of the evidence is for the jury to pass upon, although the court may, in its discretion, express its opinion thereon.

4. The testimony of ordinary persons as to the conduct, manner, and appearance of the insured, and to the impressions thereby made upon them, is competent to go to the jury upon the question of his insanity.

5. The charge of the court below upon that question, being in the language sanctioned and approved in *Life Insurance Company* v. *Terry,* 15 Wall. 580, was not erroneous.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

This was an action on a policy, issued by the Charter Oak Life Insurance Company, upon the life of Emil G. Rodel, for the benefit of his wife, the plaintiff below. The policy was dated June 25, 1873, and contained a promise to pay to the plaintiff, "for her sole and separate use and benefit, ninety days after due notice and satisfactory evidence of the death of the said Emil G. Rodel and of the just claim of the assured (or proof of interest, if assigned or held as security), under this policy, has been received and approved by the company." It further contained, among other conditions, the following: that, in case the said Emil G. Rodel should " die by his own hand," the policy should be void. It was conceded that he died on the fifth day of December, 1873, from the effects of poison administered by his own hand; and this fact was set up in the answer, by way of defence: but the plaintiff in her replication averred that he was insane at the time, and not in possession of his mental faculties, and not responsible, in consequence, for his act; and denied that he committed suicide or died by his own hand, within the meaning and intention of the policy. Whether the deceased was insane or not when he took the poison was the principal issue in the cause. The company, however, in its answer, made another issue, by denying that it had ever received due notice and satisfactory evidence of the death of Rodel and of the just claim of the plaintiff under the policy; averring that the only proof and notice it had received from the plaintiff of Rodel's death, and of her claim under the policy, had been and was to the effect that "said Emil G. Rodel committed suicide at about 6.35 o'clock, P.M., Friday, Dec. 5, 1873, in a saloon on north-east corner of Eleventh and Market Streets, in the city and county of St. Louis., Mo., by taking poison," as appeared from the certificate of the coroner accompanying and making part of said notice and proof received by the company, without any other proof of the death or of the circumstances thereof. The plaintiff in her replication averred, as she had done in her petition, that due notice and proof of his death and of her claim had been given, according to the terms of the policy.

On the trial, the plaintiff first put in evidence the policy, and the proofs of death which had been served on the company. The latter were in the usual form, but accompanied by the coroner's certificate, stating the cause of death as alleged in the answer. They were objected to as insufficient, the company contending that, by the policy itself, satisfactory notice and proof of death and of the just claim of the assured was a condition precedent to the right of demanding payment, and, consequently, to the right of bringing suit on the policy.

The court overruled the objection and admitted the evidence, and the company excepted.

There was a verdict and judgment for the plaintiff for $5,130; whereupon the company brought the case here.

The other facts in the case, and the instruction given and those refused, are set forth in the opinion of the court.

*Mr. Samuel Knox* for the plaintiff in error.

The proofs of death and of the claim of the plaintiff below, furnished the company, are wholly insufficient to charge it in this action. The requirements of the policy in that respect are a condition precedent, and must be strictly complied with. Bliss, Life Ins. (2d ed.), sect. 257; May, Ins., sect. 465; *O'Reilly* v. *Guardian Mut. Life Insurance Co.*, 60 N. Y. 169; *Taylor* v. *Ætna Life Insurance Co.*, 13 Gray (Mass.), 434; *Woodfin* v. *Asheville Mut. Life Insurance Co.*, 6 Jones (N. C.), L. 558; *Columbia Insurance Co.* v. *Lawrence*, 2 Pet. 25; *Campbell* v. *Charter Oak Fire and Marine Insurance Co.*, 10 Allen (Mass.), 213; *Edgerly* v. *Farmers' Insurance Co.*, 43 Iowa, 587; *Johnson* v. *Phœnix Insurance Co.*, 112 Mass. 49.

The plaintiff herself notified the defendant that the insured died by his own hand; yet she failed to furnish with the preliminary proofs, as to her just claim under the policy, the slightest evidence that at the time of the suicide he was so far insane as to relieve his act from the consequences provided in the policy.

The company was therefore justified in refusing to pay, upon evidence neither satisfactory nor sufficient to show any thing, except that the company was not liable upon the policy, and that the suit could not be maintained. *Insurance Company* v. *Newton*, 22 Wall. 32; *Campbell* v. *Charter Oak Fire and Marine*

*Insurance Co., supra; Braunstein* v. *Accidental Death Insurance Co.,* 1 B. & S. 782; 1 Greenl. Evid., sect. 2.

The court erred in refusing to direct a verdict for the defendant at the close of the plaintiff's case. 2 Greenl. Evid., sects. 372, 373; Bliss, Life Ins. (2d ed.), sect. 367; 2 Bishop, Cr. Proc. (2d ed.), sects. 669–673; *Coffey* v. *Home Life Insurance Co.,* 35 N. Y. Sup. Ct. 314; *Weed* v. *Mutual Benefit Life Insurance Co.,* id. 386; *Knickerbocker Life Insurance Co.* v. *Peters,* 42 Md. 414; *Merritt* v. *Cotton States Life Insurance Co.,* 55 Ga. 103; *McClure* v. *Mut. Life Insurance Co.,* 55 N. Y. 651; Ray, Med. Jur. of Ins. (5th ed.), sect. 488; 2 Taylor, Med. Jur. (2d ed.) 637; *Phadenhauer* v. *Germania Life Insurance Co.,* 7 Heisk. (Tenn.) 567; *Fowler* v. *Mut. Life Insurance Co.,* 4 Lans. (N. Y.) 202; *Moore* v. *Connecticut Mut. Life Insurance Co.,* 4 Bigl. L. Ins. R. 138; *Coverston* v. *Connecticut Mut. Life Insurance Co.,* id. 169; *American Life Insurance Co.* v. *Isett's Adm'r,* 74 Pa. St. 167; *Borradaile* v. *Hunter,* 5 Sco. N. R. 418; *Dufaur* v. *Professional Life Assurance Co.,* 25 Beav. 599; *State* v. *Stickley,* 41 Iowa, 232; *State* v. *Felter,* 25 id. 67; *Dean* v. *American Mut. Life Insurance Co.,* 4 Allen (Mass.), 96; *De Gogorza* v. *Knickerbocker Life Insurance Co.,* 65 N. Y. 232; *Gay* v. *Union Mut. Life Insurance Co.,* 9 Blatchf. 142; *Hathaway* v. *National Life Insurance Co.,* 48 Vt. 335; *Equitable Life Assurance Society* v. *Paterson,* 41 Ga. 338; *Commonwealth* v. *Mosler,* 4 Pa. St. 264; *Cooper* v. *Massachusetts Mut. Life Insurance Co.,* 102 Mass. 227; *Terry* v. *Life Insurance Company,* 1 Dill. 403; *Van Zandt* v. *Mutual Benefit Life Insurance Company,* 55 N. Y. 169; *St. Louis Life Insurance Co.* v. *Graves,* 6 Bush (Ky.), 268; *Insurance Company* v. *Terry,* 15 Wall. 580; *Breasted* v. *Farmers' Loan and Trust Co.,* 4 Hill (N. Y.), 73; *Easterbrook* v. *Union Mutual Life Co.,* 54 Me. 224.

Whether there is any evidence, or, if there is, whether it is sufficient to sustain the burden of proof on any issue, is always a question of law for the court. *Pleasants* v. *Fant,* 22 Wall. 116; *Improvement Company* v. *Munson,* 14 id. 442; *Schuchardt* v. *Allens,* 1 id. 359; *Commissioners, &c.* v. *Clark,* 94 U. S. 284.

The judgment should be reversed, because of the manifest error committed by the court in refusing the several instructions to the jury requested by the defendant. 1 Greenl. Evid.,

sect. 2; *Insurance Company* v. *Newton*, 22 Wall. 32; *Campbell* v. *Charter Oak Fire and Marine Insurance Co.*, 10 Allen (Mass.), 213; *Braunstein* v. *Accidental Death Insurance Co.*, 1 B. & S. 782; *Van Zandt* v. *Mut. Benefit Life Insurance Co.*, 55 N. Y. 169; *McClure* v. *Mut. Life Insurance Co.*, id. 651; *Fowler* v. *Same*, 4 Lans. (N. Y.) 202; *Merritt* v. *Cotton States Life Insurance Co.*, 55 Ga. 103.

The charge of Mr. Justice Miller, in *Terry* v. *Life Insurance Co.*, 1 Dill. 1, was sustained in 15 Wall. 580, on the ground that it was applicable to the case made by the evidence. But it will not be contended that this court held that such a charge would be proper in every case, or provide the full and complete test of the effect of suicide under all the changing circumstances of each particular case, on policies of life insurance, where, perhaps for the double purpose of rescuing the memory of the dead from obloquy, and of abstracting from the coffers of a corporation a part of its wealth, it is claimed that the deceased came to his death through insanity.

A charge, giving statements of law, however unexceptionable as abstract propositions, is erroneous, if they are not applicable to the case, as they tend to mislead the jury. *Clarke* v. *Dutcher*, 9 Cow. (N. Y.) 674; *Wardell* v. *Hughes*, 3 Wend. (N. Y.) 418; *Beaver* v. *Taylor*, 1 Wall. 637; *United States* v. *Brietling*, 20 How. 252; *Goodman* v. *Simonds*, id. 343; *Dubois* v. *Lord*, 5 Watts (Pa.), 49; *Haines* v. *Stouffer*, 10 Pa. St. 363.

*Mr. John D. S. Dryden, contra.*

The court below did not err in overruling the objection of the defendant to the proofs of death. The court was, in effect, asked to decide, as matter of law, that suicide absolutely avoided the liability of the company, thus determining the whole issue without evidence of the condition of the insured as to sanity or insanity at the time of his death. The court was also asked to decide that it rested with the defendant alone to determine its responsibility, by saying what was or what was not satisfactory proof of death.

No objection was made to the proofs of death other than that they showed that the insured had committed suicide.

The court did not err in overruling the defendant's request to take from the jury the evidence on the question of the insanity

of the insured.  If there is any evidence, it must go to the jury. *Brown* v. *Lozalere*, 44 Mo. 383; *Routsong* v. *Pacific Railroad Company*, 45 id. 236 ; *McFarland* v. *Bellows*, 49 id. 311.

Nor was there error in the refusal of the court to charge as requested by the defendant, or in the charge as given.  *Life Insurance Company* v. *Terry*, 15 Wall. 580.

Mr. Justice Bradley, after stating the case, delivered the opinion of the court.

We think there was no error in the ruling of the court below admitting evidence of the proofs of death, which had been served on the defendant.  Of course, the company could not justly contend that it might arbitrarily object to the sufficiency of the proofs; but it had an undoubted right to demand and insist upon such proofs as the law would adjudge to be reasonable and satisfactory.  The objection to those furnished was, that, whilst otherwise sufficient as proofs of the death of the insured, they disclosed at the same time a cause of death which exempted the company from liability; and hence could not be said to be sufficient proof of " the just claim of the assured " as well as of the death of Rodel.  It requires but a moment's inspection of the policy to perceive that the clause in question, so far as it requires notice " of the just claim of the assured," had reference to her claim or title to the policy, and not to the justness of her cause of action thereon.  This is the fair and natural interpretation of the words; but it is placed beyond question by the superadded words which follow in parenthesis. . The entire clause is, " due notice and satisfactory evidence of the death of the said Emil G. Rodel, and of the just claim of the assured (or proof of interest, if assigned or held as security)."  As the question of interest in the policy is not now at issue, it only remains to inquire whether the proofs were sufficient in regard to the death of the insured.  Of this, it seems to us, there can be no doubt.  Proof of death was all that was required.  This was given, and does not appear to have been objected to.  If the proofs also disclosed facts of which the defendant could avail itself as a defence to an action on the policy, this would not derogate from the sufficiency of the proofs as proofs of death.  But whilst the disclosure of such

facts might well suggest to the company the propriety of refusing payment and standing suit, it would be no bar to the bringing of a suit; otherwise, no suit could ever be brought until the parties had gone through an extra-judicial investigation resulting favorably to the assured.

The plaintiff next proceeded to examine witnesses respecting the condition of the deceased's mind at the time of his death; and the evidence is all spread upon the record. When the plaintiff rested, the defendant moved that the jury be instructed to render a verdict for the defendant on the ground that the evidence of the plaintiff was insufficient to sustain a recovery. This motion was also overruled, and an exception was taken. It is hardly necessary to say, that, if there was any evidence tending to prove that the deceased was insane when he took the poison which caused his death, the judge was not bound to, and indeed could not properly, take the evidence from the jury. The weight of the evidence is for them, and not for the judge, to pass upon. The judge may express his opinion on the subject, and in cases where the jury are likely to be influenced by their prejudices, it is well for him to do so; but it is entirely in his discretion. *Drakely* v. *Gregg*, 8 Wall. 242; *Hickman* v. *Jones*, 9 id. 197; *Barney* v. *Schmeider*, id. 248; *Brown* v. *Lozalere*, 44 Mo. 383; *Roustong* v. *Railroad Company*, 45 id. 236; *McFarland* v. *Bellows*, 49 id. 311; *Consequa's Case*, Pet. C. C. 225; *M'Lanahan* v. *Universal Insurance Co.*, 1 Pet. 170; *Tracy* v. *Swartwout*, 10 id. 80; *Gaines* v. *Dunn*, 14 id. 322; *Mitchell* v. *Harmony*, 13 How. 131; 9 Pet. 541; 2 id. 137.

Whatever may be our opinion as to the weight of the evidence given by the plaintiff in this case, it cannot be disputed that there was at least some evidence of Rodel's insanity. Besides the tedious and painful details of his conduct, manner, and looks given by his wife and others, evincing great strangeness and total change in his manner, there is this positive testimony of his sister-in-law, Emma Millentz. To the question put to her by the court, "How did he look and act the last week?" she answered, "Well, I thought he looked like he was insane." The court asked her what she meant by that, why she thought so; to which she replied, "Because he used always to be so kind; when a person came he would get up; he was

always gallant and polite, and toward the last he looked straight before him, — staring straight before him ; before, he was very pleasant and polite, but towards the last he would not notice anybody when they came in at all ; also, he walked entirely different. He looked as if confused in his mind. He did not seem to know what to answer if any person asked him a question." And on cross-examination she said : "I mean by insane that he was crazy, and that he always looked straight before him, staring, and before that he had always been happy and joyful. I do not know what to say that I mean by ' crazy.' The other symptoms of being insane or crazy which he manifested were that his whole appearance seemed to be changed, and in his personal habits he seemed to neglect himself. His hair was unkempt, standing on end, and in his attire he was untidy, whereas before he was very accurate in every thing. These are the only reasons I have for supposing that he was not in his right mind, and because he always looked so straight before him, staring."

Lewis Baum, another witness, a notary public, who saw Rodel almost every day, testifies that he came into his office about two o'clock of the day on which he died ; and he adds : "The very moment he stepped in I was surprised in seeing him, having known him long before, and knowing that he had always been a very jovial and lively young man ; good associate in company. He came in like he was in a great state of excitement. I did not know what it was, though. He had a little business with me, and then he left. Well, he looked to me a different man altogether ; he was in a great state of excitement. His eyes looked — well, I cannot describe it now exactly, but he looked like a man who is out of his mind altogether." And on a rigid cross-examination he adhered to this view : "the impression he made on me was such that I said to myself, — the impression on me was that that man was not in his right mind."

Although such testimony from ordinary witnesses may not have great weight with experts, yet it was competent testimony, and expressed in an inartificial way the impressions which are usually made by insane persons upon people of ordinary understanding.

We think there was no error in the refusal of the judge to give the instruction requested.

When the evidence was closed, the defendant's counsel proposed various instructions to the jury. We will pass over those which relate to the alleged insufficiency of notice and proof of death, which have been already considered, and those which were substantially adopted by the judge, or on which no errors have been assigned. The following request and another of substantially the same purport were refused; namely, that the plaintiff could not recover if the assured knew that the act which he committed would result in death, and deliberately did it for that purpose. An additional request was made to charge that a certain letter, written evidently under great excitement by Rodel to his wife on the day of his death, apprising her of his intention to destroy himself, and his reasons for so doing, based upon his pecuniary troubles and anticipated exposures, bore evidence of coolness and deliberation, and, of itself, afforded presumptive evidence of sanity at the time when it was written. This request was also refused.

The judge, after stating that the burden of proving the insanity of the deceased was on the plaintiff, charged the jury as follows : —

"It is not every kind or degree of insanity which will so far excuse the party taking his own life as to make the company insuring liable; to do this, the act of self-destruction must have been the consequence of insanity, and the mind of the deceased must have been so far deranged as to have made him incapable of using a rational judgment in regard to the act which he was committing. If he was impelled to the act by an insane impulse, which the reason that was left him did not enable him to resist, or if his reasoning-powers were so far overthrown by his mental condition that he could not exercise his reasoning faculties on the act which he was about to do, the company is liable. On the other hand, there is no presumption of law, *prima facie* or otherwise, that self-destruction arises from insanity; and you will remember a great many jurors were excused from the panel because they thought the law was otherwise; therefore, you will bear in mind that there is no presumption, *prima facie* or otherwise, that self-destruction arises from insanity; and if you believe from the evidence that the deceased, although excited or angry or disturbed in mind, formed a

determination to take his own life, because in the exercise of his usual reasoning faculties he preferred death to life, then the company is not liable, because he died by his own hand within the meaning of the policy.

"If the insured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery; that is, he did die by his own act. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, and when his reasoning faculties are so far impaired that he shall not be able to understand the moral character or the general nature, consequence, and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse which he has not the power to resist, such death is not in the contemplation of the parties to the contract, and the insurer is liable."

The defendant's counsel excepted to the charge thus given.

This charge is in the very words of the charge sanctioned and approved by this court in the case of *Life Insurance Company* v. *Terry*, 15 Wall. 580, including an explanatory clause of the opinion of the court in that case. We see no reason to modify the views expressed by us on that occasion. We think, therefore, that there was no error in the charge as given. It follows that the judge properly refused the request to charge that the plaintiff could not recover if the insured knew that the act which he committed would result in death, and deliberately did it for that purpose. Such knowledge and deliberation are entirely consistent with his being, in the language of the charge, "impelled by an insane impulse, which the reason that was left him did not enable him to resist;" and are, therefore, not conclusive as to his responsibility or power to control his actions.

The omission to charge as requested, with regard to the letter written by Rodel, is subject to the same considerations, and may be dismissed with only this further remark: that persons of most decided insanity often exhibit consistency of purpose, coolness, and even great ingenuity in the pursuit of some insane object to which they are impelled by the diseased condition of mind with which they are afflicted. An inspection of the letter, however, shows that it is pervaded by a very abnormal degree of excitement; and we think the judge did quite right,

even on this ground, to decline the unqualified instruction which was requested in relation to it.

This disposes of all the errors assigned by the plaintiffs in error, and our conclusion, therefore, is, that the judgment of the Circuit Court must be affirmed; and it is *So ordered.*