# TURNER *v.* AMERICAN SECURITY AND TRUST COMPANY

APPEAL FROM AND IN ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 101.   Argued March 9, 10, 1909.—Decided April 5, 1909.

Where the issue is whether a person is of sound or unsound mind, a lay witness, who has had an adequate opportunity to observe the speech and conduct of that person, may, in addition to relating the significant instances of speech and conduct, testify to the opinion formed at the time of observation as to the mental capacity of such person. While a general rule cannot be framed for all cases, and in clear cases of abuse the appellate court should reverse, the determination of whether a witness is qualified to state his opinion as to the mental

condition of a testator is for the trial judge who has all the evidence and the witness before him, and in this case the trial judge does not seem to have abused his discretion as to the admission of testimony.

Evidence as to an alleged delusion of testator thirty years before execution of the will *held* to be properly excluded both because of remoteness and of the tendency to raise a collateral issue as to whether the statements connected therewith were or were not actually false.

Where the wife as caveator attacks testator's soundness of mind because he referred to himself at times as a widower and at times as divorced, an agreement of separation and a deed referring to himself as widower admitted solely to explain why testator so referred to himself *held* competent for that purpose, but evidence by the wife as to her reasons for signing the agreement and other instruments, in which she joined with her husband as his wife, were properly excluded.

The admission of incompetent evidence is not reversible error if subsequently it is distinctly withdrawn from the jury, and so *held* in this case where a letter was erroneously admitted but the presiding judge, at request of the party objecting to its admission, instructed the jury that nothing in such letter was to be taken as evidence of truth of the statements therein or even to be used for purposes of cross-examination.

29 App. D. C. 460, affirmed.

THE facts, which involve the validity of the will of Henry E. Woodbury, are stated in the opinion.

*Mr. J. J. Darlington* and *Mr. Charles F. Carusi* for appellant and plaintiff in error.

*Mr. William F. Mattingly* and *Mr. Stanton C. Peelle* for appellees and defendants in error.

MR. JUSTICE MOODY delivered the opinion of the court.

In this case we are asked to review, on appeal and writ of error, a judgment of the Court of Appeals of the District of Columbia, affirming a decree of the Supreme Court of the District sitting as a Probate Court, which admitted to probate certain paper writings purporting to be the will and codicils thereto

of Henry E. Woodbury. The decree was based upon the findings of a jury upon two issues submitted to it, namely:

"(1.) At the time of the execution of the said several paper writings propounded for probate as the last will and testament of Henry E. Woodbury, deceased, was the said Henry E. Woodbury of sound and disposing mind and capable of making a valid deed or contract?

"(2.) Was execution of said paper writings procured by the fraud or undue influence of Sallie Woodbury, Mena Stevens, or either of them, or any other person or persons?"

The jury found that the testator was of sound mind and that he was not unduly influenced. The questions brought here arose upon the trial of those issues and are stated in the bill of exceptions duly allowed. There are nineteen assignments of error, relating to the admission or exclusion of evidence, and to the instructions or refusal of instructions to the jury. There was conflicting evidence upon the issues. As no question of the sufficiency of the evidence of either party is properly here, a brief preliminary statement of facts is sufficient, and any other facts which may be needed to explain the questions of law will be stated in connection with the disposition of those questions.

According to the practice in the District in a contest of this kind, those propounding the instrument for probate are called caveatees and those opposing its probate caveators.

The testator, Henry E. Woodbury, died January 15, 1905, seventy-nine years of age. The will was executed April 11, 1902, and five codicils were executed at different times from January 5, 1903, to December 20, 1904. With slight exceptions, the will and codicils devise and bequeath the real and personal property to charities. The testator had been a physician until 1881, when an injury compelled him to cease the practice of his profession. He was childless. He had married in 1870, and in less than two years had parted from his wife, and thereafter they lived separately, though without being divorced. A sister, Sallie Woodbury, lived with him until her death, in December, 1902. After the death of the sister, Mena M. Stevens became

his housekeeper and nurse. A nephew, Molyneaux L. Turner, was his heir and next of kin. His wife survived the testator, and, with the nephew, filed a caveat against the probate of the paper writings purporting to be a will and codicils.

1. The first eleven assignments of error relate to the admission or exclusion by the trial court of the testimony of lay witnesses as to their opinion for or against the mental capacity of the testator. In the view we take of these assignments of error they may be considered together, and without any statement as to the testimony of the several witnesses.

The rule governing the admission of testimony of this character, which has been prescribed by this court for the courts of the United States, is easy of statement and administration. Where the issue is whether a person is of sound or unsound mind, a lay witness, who has had an adequate opportunity to observe the speech and other conduct of that person may, in addition to relating the significant instances of speech and conduct, testify to the opinion on the mental capacity formed at the time from such observation. *Insurance Co.* v. *Rodel*, 95 U. S. 232; *Connecticut Mutual Life Ins. Co.* v. *Lathrop*, 111 U. S. 612; *Queenan* v. *Oklahoma*, 190 U. S. 548. In no other way than this can the full knowledge of an unprofessional witness with regard to the issue be placed before the jury, because ordinarily it is impossible for such witness to give an adequate description of all the appearances which to him have indicated sanity or insanity. Such testimony has been well described as a compendious mode of ascertaining the result of the actual observations of witnesses. Ordinarily, and perhaps necessarily, the witness in testifying to his opportunities for observation and his actual observation relates more or less fully the instances of his conversation or dealings with the person whose mental capacity is under consideration, and it is, of course, competent, either upon direct or cross-examination, to elicit those instances in detail.

The order of the evidence must be left to the discretion of the trial judge, but when sufficient appears to convince the

trial judge that the witness has had an opportunity for adequate observation of the person's mental capacity, and has actually observed it, then the judge may permit him to testify to his opinion. This was the course pursued by the trial judge in this case. With respect to each witness, whose testimony as to opinion was admitted or excluded, the judge exercised his discretion upon the qualifying testimony.

We are asked to review that discretion and to say that in the case of the eleven witnesses before us it was improperly exercised. We have no hesitation in declining to do this. No general rule can well be framed which will govern all cases, and an attempt to do that would multiply exceptions and new trials. The responsibility for the exercise of the judicial power of determining whether a given witness has the qualifications which will permit him, to the profit of the jury, to state his opinion upon an issue of this kind, may best be left with the judge presiding at the trial, who has a comprehensive view of the issue and of all of the evidence and the witness himself before his face.

This is not to say that in a very clear case an appellate court ought not to review the discretion of the trial judge. For instance, if it should appear that the witness had never spoken to the testator or seen any significant act, but merely observed him driving from day to day through the streets, and the opinion of such a witness as to sanity had been received, it would be the duty of the appellate court to correct the error. On the other hand, if the witness for years had been in constant communication with the testator, had frequently conversed with him and observed his conduct from day to day, the exclusion of the opinion of the witness ought to be corrected by the appellate court. These are instances of a plain abuse of judicial discretion.

The true rule of action for an appellate court is stated in *Wheeler* v. *United States,* 159 U. S. 523. In that case this court was considering the admissibility, upon the trial of an indictment for murder, of the testimony of a boy five and a

half years old at the time of the trial. The court, speaking by
Mr. Justice Brewer, said (p. 524):

"The decision of this question rests primarily with the trial
judge, who sees the proposed witness, notices his manner, his
apparent possession or lack of intelligence, and may resort to
any examination which will tend to disclose his capacity and
intelligence as well as his understanding of the obligations of
an oath. As many of these matters cannot be photographed
into the record, the decision of the trial judge will not be dis-
turbed on review unless from that which is preserved it is clear
that it was erroneous."

Though the question of competency in that case differed ma-
terially from the questions of competency in this case, the spirit
which underlies the statement of the court there ought to gov-
ern here.

We have examined these eleven assignments of error and
brought them to the test of the foregoing principles. We find
that no admissions or exclusions of testimony were clearly er-
roneous, and accordingly all the assignments are overruled.

2. The caveators, on the issue of unsoundness of mind of the
testator in 1902, and the following years, offered in evidence
the record in a suit for divorce brought by the testator in 1872,
and more especially that part of the record wherein he alleged,
as a cause for divorce, that his wife was incapable of a valid
marriage on account of a physical malformation. The physi-
cians appointed by the court reported, after an examination of
the wife, that the condition alleged did not exist. The offer of
this evidence was accompanied by the contention that it showed
a delusion on the part of the testator. The evidence was ex-
cluded and we think rightly, either upon the ground that it
was too remote in point of time or that it would lead to a col-
lateral inquiry whether the statement was actually false, and
if so, whether it was the result of a delusion, or of malice or
falsehood.

3. The caveators had introduced evidence that the testator
had spoken of himself as a widower and as having been divorced

from his wife, both of which statements were untrue. Obviously, the testimony that these statements had been made by the testator could only have been admitted as proof of mental unsoundness. To meet this testimony, and the inference which might be drawn from it, the judge admitted in evidence a written agreement made in 1887 by the testator with his wife. The material parts of the agreement follow:

"Witnesseth: That, whereas the said Anna L. Woodbury is seized and possessed of certain lands and real estate in her own right in the city of Washington, D. C., and Cambridge, Mass.; and whereas the said Anna L. Woodbury desires to be able to sell, dispose of and convey the same as she could were she a *femme sole;* and whereas she is unable to do so unless by and with the consent and agreement of her said husband aforesaid, Henry E. Woodbury;

"Now, therefore, it is agreed by these presents that the said Henry E. Woodbury will permit the said Anna L. Woodbury to sell, dispose of and convey any and all of her real estate as at any time she may desire to do; and in consideration of this relinquishment of all right, title, interest and claim of him, the said Henry E. Woodbury, in and to, the property and lands of the said Anna L. Woodbury, the said Anna L. Woodbury hereby covenants and agrees for herself, her heirs and assigns, to relinquish all and every right, title, interest and claim that she (or they through her) may have to any and to all of the property personal or real that the said Henry E. Woodbury possesses now or may hereafter acquire, together with her right of dower in any estate the said Henry E. Woodbury may leave in case of his demise. And she the said Anna L. Woodbury further covenants and agrees with the said Henry E. Woodbury, that under no circumstances will the said Anna L. Woodbury ask for, demand or claim from him alimony or a support for any time past, present or to come.

"In short this covenant and agreement is intended to restore to each of the aforesaid parties—Anna L. Woodbury and Henry E. Woodbury—the same right to contract, to use or to dispose

of their respective properties, lands and estates—personal and real—as they possessed before they were married."

Counsel for the caveatees offered this to explain the statements of the testator, and urged its admission in connection with the fact of separation. The caveators' counsel objected to it, because it showed neither a divorce nor that the testator was a widower. The judge then said: "I think it may be competent to explain the situation here, and I will admit it." The judge further said: "Inasmuch as you have two contradictory statements from him, I think this may come in in response to that." Counsel for the caveatees, in the course of the discussion, said: "We have a right to show the relations existing between Dr. Woodbury and members of his family," but the court did not assent to this proposition and made no response to it.

We think it is clear that this agreement was admitted solely for the purpose of explaining the testator's statement about his divorce and widowerhood. If the caveators wished to limit its use, any further than it was limited by the judge in the ruling admitting it, an instruction to the jury should have been asked. We think it is competent for the purpose for which it was offered and admitted, and that its weight was for the jury. In it the wife relinquished all claims to her husband's property, real or personal, and all right to dower or of alimony, or of other support, and concluded by saying: "This covenant and agreement is intended to restore to each of the aforesaid parties—Anna L. Woodbury and Henry E. Woodbury—the same right to contract, to use or to dispose of their respective properties, lands and estates—personal and real—as they possessed before they were married." Though the weight of this evidence might have been slight, we think the evidence was competent.

4. The caveators, for the purpose of explaining the signature by the wife to the agreement of 1887, then offered to prove by her deposition that she had been advised by physicians, now dead, to sign any paper that the testator wished her to sign, and that it was the mania of the testator to be rid of her and

her property, and that the testator had said to them that he would die if he could not get rid of both. This testimony was excluded, and we think rightly. The motive of the wife in signing the agreement of 1887 was entirely immaterial. She did sign it, and it was admitted solely for the purpose of explaining the testator's statement that he was a widower and had been divorced.

5. The facts upon which the next assignment of error is based are very obscure. Mena M. Stevens, the nurse, was called as a witness by the caveatees. Upon cross-examination, she testified that in 1903 and 1904 she had received from the testator gifts of certain stock and a deed to certain lands, whose rental value was $21.90 per month. The deed was delivered to a person to keep for the nurse until the testator's death. This deed was offered in evidence by the caveators. It was dated September 12, 1904. The testator described himself in this deed as a widower. Thereupon caveatees put in evidence, without objection, a deed from Henry E. Woodbury and Anna L. Woodbury, his wife, to the American Security and Trust Company, dated November 18, 1903. Whether this deed included the same land conveyed to Stevens we are unable to tell from the descriptions, but we assume it did not. The purpose for which the deed was offered does not appear. As it was admitted just prior to the admission of the agreement of 1887, and subsequent to the admission of the deed to Stevens, in which the testator called himself a widower, we may fairly assume that, like the agreement of 1887, it was offered to explain the use of the word "widower." There is nothing in the bill of exceptions to show that it was used for any other purpose, and we treat it as limited to that purpose.

The caveators offered, by the deposition of the wife, to prove the same explanation of this deed as was offered for the agreement of 1887, but the evidence was excluded. We think that the caveators have not shown that the excluded evidence was competent, and we therefore overrule this assignment of error.

It should be said generally of this and the preceding assign-

ment of error that there is nothing to show that the instruments were received or used as evidence that the wife regarded the testator as of sound mind and capable of transacting business. There was, therefore, no occasion to offer evidence to explain the act and destroy the effect of the admission. The whole argument for the admissibility of. the explanatory evidence is based upon the theory that the instruments were offered to show the wife's belief as to his mental condition—a theory which finds no support in the bill of exceptions. If the instrument had been admitted and used for that purpose a different question would be presented.

6. Turner was called as a witness in his own behalf. On cross-examination he was asked if he had made certain insulting remarks to his aunt, Sallie Woodbury. He replied that he had not. He was then shown a paper and asked if it was in his aunt's handwriting, and replied that it was, and was a letter addressed to William H. Turner. He was then asked, over the objection and under the exception of the caveators, whether the letter did not assert that the witness had made the insulting statements. The cross-examining counsel was then permitted to read the letter for the purpose of examining the witness upon the statements contained in it. This was done over objection and under exception. The letter stated that the witness had made the insulting remarks which he had denied making. The cross-examining counsel proceeded: "Now, do you mean that that statement by her is untrue?" Answer: "I do not remember making any such statement; I am not in the habit of using any such language."

It is too clear for discussion that the use permitted to be made of this letter was erroneous, and if the matter had stopped there we should be compelled to grant a new trial. The presiding judge, however, instructed the jury in behalf of the caveators, and, it would seem, at their request, as follows:

"While the caveator was allowed by the court to be cross-examined as to the statements contained in an undated letter, purporting to have been written by his aunt, Sallie Woodbury,

addressed to William H. Turner, the jury are instructed that neither the said letter nor the use thereof so allowed by the court to be made upon the cross-examination of the caveator is to be taken as evidence of the truth of any of the said statements in said letter contained or allowed to be used for the purpose of cross-examination as aforesaid."

The general rule is that the admission of incompetent evidence is not reversible error if it subsequently is distinctly withdrawn from the consideration of the jury. *Pennsylvania Co.* v. *Roy,* 102 U. S. 451, 458; *Hopt* v. *Utah,* 120 U. S. 430, 438. There are cases which emphasize the necessity of clearly and unmistakably withdrawing the evidence from the consideration of the jury. *Washington Gas Light Co.* v. *Lansden,* 172 U. S. 535, 554; *Throckmorton* v. *Holt,* 180 U. S. 552, 567. But we are satisfied that this was done in this case, and that the instruction cured the error. It directed that the letter should not be taken as evidence of the truth of any of its statements or even allowed to be used for the purpose of cross-examination.

7. The remaining assignments of error relate to two instructions given to the jury and the refusal of an instruction requested by the caveators. None of the questions raised here touches upon any vital part of the case, and, while not waived, they were not much insisted upon in argument. An examination of the charge satisfies us that it contained all that the caveators were entitled to and that it was correct, full and adequate to present the issues to the jury. We will not prolong this opinion beyond what was said in the court below on this subject, which we approve.

*Judgment affirmed.*


MR. JUSTICE HARLAN did not take part in the decision of this case.