195 F.2d 763
 90 U.S.App.D.C. 236
 DEBRUIN,
v.
DEBRUIN.
 No. 10977.
 United States Court of Appeals District of Columbia Circuit.
 Argued Jan. 8, 1952.
Decided Feb. 28, 1952.
 
 Thomas H. Patterson and James T. Barbour, Jr., Washington, D.C., with whom Joseph M. Dawson, Washington, D.C., was on the brief, for appellant.
 Elizabeth M. Cox, Washington, D.C., for appellee.
 Before EDGERTON, PROCTOR and BAZELON, Circuit Judges.
 BAZELON, Circuit Judge.
 
 
 1
 Mrs. deBruin, appellee here, through a committee appointed in her behalf in Virginia, brought suit against her husband, appellant here, for separate maintenance. He responded with a counterclaim which prayed for an absolute divorce on the grounds of desertion for two years or voluntary separation for five years. Judgment in the District Court went against Mr. deBruin and in favor of his wife. The court, sitting without a jury, concluded that she had lacked the mental capacity to form the intent which is a necessary prerequisite to either desertion or voluntary separation.
 
 
 2
 The conclusion of the trial court with regard to appellee's mental capacity was based upon the testimony of laymen and of a physician who was not a psychiatrist. This was not error. '(a)s a general rule the admissibility of the evidence of lay witnesses to the mental capacity of a testator is a matter in the sound discretion of the trial court.'[1] There is no reason which [90 U.S.App.D.C. 237] would justify the application of a different rule in the present case. Thus, laymen who have had a particularly good vantage point for observing the person under scrutiny may express their opinions as to mental capacity to court or jurors who have not had such an opportunity. And the court or jurors are the reasonable men who may find the truth therefrom. This is the method required for fact-finding[2] under our system of jurisprudence despite great advances in psychiatry in recent decades. The physician's testimony was not offered as being that of an expert in the field of psychiatry. He had known the appellee for many years and had attended her three times during January and February of 1941, early in her illness. The admissibility of his testimony, therefore, did not depend upon any special competence in mental disorders.[3]
 
 
 3
 Appellant contends that the trial court's finding that appellee lacked the mental capacity to desert or to separate voluntarily was clearly erroneous. Whether appellee possessed the requisite degree of capacity was the subject of considerable testimony, virtually all of which indicated a lack of capacity. The commitment of appellee in 1948 lends credence to the conclusion reached by the trial judge with regard to her state of mind prior to such commitment. Under the circumstances, we are unable to say that the finding was 'clearly erroneous.'
 
 
 4
 Affirmed.
 
 
 
 [1]
 Obold v. Obold, 1947, 82 U.S.App.D.C. 268, 163 F.2d 32, 33. See also Turner v. American Security & Trust Co., 1909, 213 U.S. 257, 260, 29 S.Ct. 420, 53 L.Ed. 788
 
 
 [2]
 '(T)he mental condition of an individual, as sane or insane, is a fact, and the expressed opinion of one who has had adequate opportunities to observe his conduct and appearance is but the statement of a fact'. Connecticut Mutual Life Ins. Co. v. Lathrop, 1884, 111 U.S. 612, 620, 4 S.Ct. 533, 537, 28 L.Ed. 536. See also Stewart v. Overholser, 1950, 87 U.S.App.D.C. 402, 407-408, 186 F.2d 339
 
 
 [3]
 Whether 'physicians and surgeons of practice and experience' and training in fields other than psychiatry 'are experts upon the question of sanity or insanity' is not presented here. Hamilton v. United States, 1905, 26 App.D.C. 382, 392. But see Overholser: Psychiatric Expert Testimony, 42 J.Crim.L.& Criminology 283, 295-6 (1951): 'By all means there should be insistence on qualifications. The courts in general assume that any physician is competent to testify on any topic in the field of medicine. This is certainly unrealistic, especially with regard to psychiatry in view of the wholly inadequate training in psychiatry which until very recently was given to medical students, and the general lack of interest of the medical profession in the subject of mental disorder. The American Psychiatric Association, concerned with the problem of the inadequately qualified psychiatric 'expert,' was largely motivated by this concern in the establishment of the American Board of Psychiatry and Neurology in 1934. The requirements for certification by this Board are high, and there is every assurance that a diplomate of the Board may be looked upon as professionally competent in his field. It is to be hoped, indeed, that eventually courts may come to look upon certification by the Board as a prerequisite to admission to the giving of expert testimony in the field of psychiatry, or at least to question the qualifications of the non-diplomate.'