**Easton Ray McKENZIE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 6057.

United States Court of Appeals
Tenth Circuit.

April 30, 1959.

Rehearing Denied May 20, 1959.

Bennett S. Aisenberg, Denver, Colo. (Edwin Langley and A. Camp Bonds, Muskogee, Okl., on the brief), for appellant.

Frank D. McSherry, U. S. Atty., Muskogee, Okl., and Harry G. Fender, Asst. U. S. Atty., Wagoner, Okl. (Paul M. Brewer, Asst. U. S. Atty., Muskogee, Okl., on the brief), for appellee.

Before BRATTON, Chief Judge, PICKETT, Circuit Judge, and KNOUS, United States District Judge.

PICKETT, Circuit Judge.

The defendant, Easton Ray McKenzie, was convicted by a jury on a two-count indictment charging him with the crime of kidnapping, in violation of 18 U.S.C.A. § 1201, and sentenced to life imprisonment. The defense was insanity at the time of the commission of the offense. The only issue here is whether the court erred in not granting defendant's motion for judgment of acquittal, made at the close of all the evidence.

The evidence is without conflict that on August 14, 1954 the defendant, after forcing a thirteen year old girl and her ten year old brother into his automobile at Fort Smith, Arkansas under the threat of death, transported them to LeFlore County, Oklahoma, where he beat and raped the girl. Shortly thereafter he was arrested by local officers and later released to the Federal authorities. On September 29, 1954, after the indictment had been returned, upon application of his court-appointed attorney, the District Judge ordered the defendant transferred to the Medical Center for Federal Prisoners at Springfield, Missouri for examination as to his mental condition. Upon receiving a report from the hospital indicating that the defendant was in a state of insanity and incompetency to the extent that he could not cooperate in the preparation of his defense, the court ordered a hearing for the determination of defendant's mental condition. On November 30, 1954 the District Judge, acting under the provisions of 18 U.S.C.A. § 4244, found the defendant legally insane at that time and ordered him committed to the Medical Center for Federal Prisoners at Springfield, Missouri. The defendant remained in that institution until February 21, 1958, when he was found to be mentally competent to stand trial on the charges pending against him.

To sustain the plea of insanity, Selective Service records were introduced which showed that the defendant had been rejected for military service in 1943 because of paranoid psychosis, and other reasons.[1] A police captain of Fort Smith testified that he had known the defendant for some time and had talked to him early in the evening of August 14, several hours before the commission of the alleged offense; that he noticed the defendant was acting peculiarly and that his face had a wild and far-away look; and that he did not seem to reach him with his statements and questions. The officer did not believe the defendant to be drunk at the time, but told him that he thought something was wrong with him and suggested that he go home. This testimony was followed by that of seven physicians and psychiatrists, all except one of whom were, or had been, employed by the United States in that capacity, and all of whom had treated the defendant while in government hospitals or had been called upon to determine his mental condition or had exam-

---

[1] It was stipulated that the Selective Service physical examination on September 7, 1943 showed these results: "Illiterate paranoid psychosis, nervous system normal, summary of defects in order of importance—Paranoid psychosis, optic atrophy of right eye, bronchial asthma".

ined his hospital record [2]. These doctors were of the opinion that the defendant was a paranoid psychotic on August 14, 1954 and did not know the difference between right and wrong, and was not criminally responsible for his acts. Dr. Hewitt, a neurologist and neurosurgeon practicing in Muskogee, Oklahoma, testified that the defendant was brought to his office on September 25, 1954 for an examination to determine his mental condition and that he concluded from his examination that McKenzie was a paranoid schizophrenic and recommended at that time that he be sent to the government hospital at Springfield, Missouri for observation. He said that he felt the defendant was "very seriously mentally ill" at the time of the examination. He also stated that it was doubtful that the condition would improve, but there might be remissions.

■ To establish the sanity of the defendant at the time of the offense, the prosecution offered the testimony of lay witnesses who observed him a short time prior to the alleged offense, and of officers who made the arrest or questioned him later. Two of these witnesses, who worked in a cafe and bar, saw him on the night of August 14, 1954, and testified that they noticed nothing unusual about his behavior. Both said that they were busy and paid no particular attention to him. Two Arkansas officers testified that when the defendant was arrested, he had a knife in his hand which he refused to give up. He dropped the knife when one of the officers loaded a shotgun. The two officers also testified that the defendant voluntarily stated that the girl had not been harmed. An Oklahoma Sheriff testified that the defendant, while being taken to jail, told him that the two children helped him start his stalled automobile and he decided to take them for a ride and buy them something to eat; that he drove into the country where his car again stalled, but he did not harm the children. An F.B.I. agent testified that he questioned the defendant the day after the crime and the defendant told him that he had been drinking in various beer parlors the night before, but denied taking the children in his car. He said that he observed nothing unusual about the defendant and that he answered questions intelligently. None of these witnesses was either acquainted with the defendant or aware of his previous conduct or behavior. They were not asked to express opinions as to the defendant's mental condition and were not qualified to do so. Before a non-expert witness is competent to testify to the sanity or insanity of another person, he must show an acquaintance of such intimacy and duration as to clearly indicate

2. These doctors were: Dr. Stanley M. Kemler, clinical director of Central State Hospital, a mental institution, former staff psychiatrist for federal prisoners at Springfield, Missouri, where defendant was a patient assigned to him.

Dr. Charles E. Smith of the U. S. Public Health Service, assigned to the Bureau of Prisons. He was formerly Chief of the Psychiatric Service at Springfield.

Dr. William H. Philpot, a Neuropsychiatrist, practicing at Silver Springs, Md. He had been at Springfield and was a member of a committee which examined defendant in April, 1955, and recommended that he be transferred to a state hospital. The reason given was that "the staff agrees that the subject remains psychotic and incompetent with poor prognosis for recovery".

Dr. Edward C. Rinck, a psychiatrist and Chief Medical Officer at the United States Penitentiary at Terre Haute, Indiana. He was former Chief of the Psychiatric Service at Springfield and knew the defendant as a patient there and examined him on different occasions.

Dr. Lewis Moreau, a member of the psychiatric staff at Springfield. He knew defendant as a patient there, examined him and reviewed his record.

Dr. Donald Rinsley, psychiatrist practicing at Topeka, Kansas, was formerly stationed at Springfield. He saw defendant frequently and examined him with the staff. He said that he thought it was almost an inescapable conclusion that defendant was suffering from a major mental illness on August 14, 1954, and would not have known the difference between right and wrong or the nature or consequences of his acts.

that his testimony will be of value in determining the issue. The conclusion must be based upon the witness's testimony as to specific instances of behavior or conduct. Turner v. American Security & Trust Co., 213 U.S. 257, 29 S.Ct. 420, 53 L.Ed. 788; [3] De Bruin v. De Bruin, 90 U.S.App.D.C. 236, 195 F.2d 763; Dean v. United States, D.C.W.D.Okl., 150 F.Supp. 541; Lac Coarce v. State, Okl.Cr., 309 P.2d 1113; State v. Schneider, 158 Wash. 504, 291 P. 1093; Annotation 72 A.L.R. 579. The court denied a motion for judgment of acquittal and submitted the question of insanity to the jury.

 It is conceded by the prosecution that defendant's sanity was an essential element of the crime charged, and that it had the burden of proving defendant sane beyond a reasonable doubt. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499; Wright v. United States, 102 U.S.App.D.C. 36, 250 F.2d 4. If there is a failure to prove an essential element of the offense, the defendant is entitled to an acquittal. Christoffel v. United States, 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826; Politano v. United States, 10 Cir., 220 F.2d 217. Clearly the rule to be followed in federal courts

is that the defendant charged with a specific crime is entitled to an acquittal if, from all the evidence, he was not capable in law of committing the crime. Davis v. United States, supra; Leland v. State of Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302, rehearing denied 344 U.S. 848, 73 S.Ct. 4, 97 L.Ed. 659. The prosecution offered no medical testimony that defendant was sane. It relied entirely upon the testimony of non-expert witnesses to whom the defendant was a stranger. The substance of the evidence adduced by these witnesses was that they observed nothing unusual or abnormal about the defendant immediately before and after the alleged crime. This type of evidence has value only when the witness has had a prolonged and frequent opportunity to observe the subject. 20 Am.Jur., Evidence, § 853; Wright v. United States, supra; Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608.

 As a general proposition, properally qualified lay witnesses may testify as to the sanity of an accused, and such testimony may be sufficient to satisfy the burden the law places upon the prosecution even though there is expert testimony to the contrary.[4] Upon the whole,

**3.** With reference to this subject, the court, in Turner v. American Security & Trust Company, said:

"The rule governing the admission of testimony of this character which has been prescribed by this court for the courts of the United States, is easy of statement and administration. Where the issue is whether a person is of sound or unsound mind, a lay witness who has had an adequate opportunity to observe the speech and other conduct of that person may, in addition to relating the significant instances of speech and conduct, testify to the opinion on the mental capacity formed at the time from such observation. Insurance Co. v. Rodel, 95 U.S. 232, 24 L.Ed. 433; Connecticut Mutual Life Ins. Co. v. Lathrop, 111 U.S. 612, 4 S.Ct. 533, 28 L.Ed. 536; Queenan v. Territory of Oklahoma, 190 U.S. 548, 23 S.Ct. 762, 47 L.Ed. 1175. In no other way than this can the full knowledge of an unprofessional witness with regard to the issue be placed before the jury, because ordinarily it is impossible for

such witness to give an adequate description of all the appearances which to him have indicated sanity or insanity. Such testimony has been well described as a compendious mode of ascertaining the result of the actual observations of witnesses. Ordinarily, and perhaps necessarily, the witness, in testifying to his opportunities for observation and his actual observation, relates more or less fully the instances of his conversation or dealings with the person whose mental capacity is under consideration, and it is, of course, competent, either upon direct or cross-examination, to elicit those instances in detail." 213 U.S. at page 260, 29 S.Ct. at page 421.

**4.** In De Bruin v. De Bruin, 90 U.S.App. D.C. 236, 195 F.2d 763, 764, the court said: "Thus, laymen who have had a particularly good vantage point for observing the person under scrutiny may express their opinions as to mental capacity to court or jurors who have not had such an opportunity. And the court or jurors are the reasonable men who may

however, we are constrained to the view in this case, in which the evidence of trained and disinterested psychiatrists, whose duty it was to determine the mental condition of the defendant, is so overwhelming as to his insanity, that if the burden of proving sanity beyond a reasonable doubt has any significance at all, it was not met by the meager evidence of the prosecution. The motion for judgment of acquittal should have been granted. Wright v. United States, supra; Douglas v. United States, 99 U.S.App. D.C. 232, 239 F.2d 52.

Reversed.

find the truth therefrom. This is the method required for fact-finding under our system of jurisprudence despite great

advances in psychiatry in recent decades." (Footnote omitted.)