**Lester Alvin BUATTE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19912.**

United States Court of Appeals
Ninth Circuit.

Aug. 24, 1965.

---

Alan Philip Bayham, Phoenix, Ariz., for appellant.

William P. Copple, U. S. Atty., Tom Karas, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

Lester Alvin Buatte appeals from a judgment convicting him of assault with intent to commit murder on the person of Dan Secody, in violation of 18 U.S.C. §§ 1152 and 113(a) (1964). Consideration of the grounds for reversal urged by Buatte requires that we first review prior criminal proceedings involving this defendant.

On April 7, 1962, Buatte shot and killed fourteen-year-old Alice Secody in her parents' tent on the Navajo Indian Reservation in Arizona. At the same time Buatte shot Alice's brother, Dan, and struck him with a hammer. Dan's injuries did not prove fatal. On April 17, 1962, Buatte was indicted for the murder of Alice Secody. At his jury trial on that charge,

in December, 1962, Buatte's principal defense was insanity. On December 19, 1962, he was convicted, on a jury verdict, of murder in the second degree.

On March 2, 1964 another panel of this court reversed, with directions to grant Buatte's motion for acquittal. This court held that, according to the principle set forth in Davis v. United States, 165 U.S. 373, 378, 17 S.Ct. 360, 41 L.Ed. 750, the Government failed to maintain its burden of proving beyond a reasonable doubt that Buatte was sane in the legal sense at the time he killed Alice Secody. Buatte v. United States, 9 Cir., 330 F.2d 342.

Petitioning for a rehearing, the Government asserted among other things that if the judgment is to be reversed, this court should remand for a new trial rather than with directions to acquit. In its petition the Government undertook to indicate the additional evidence which it might produce in a new trial and which, the Government argued, would be adequate to support a conviction on the murder charge. This court denied the petition for rehearing, holding that a new trial would serve no purpose. We stated that neither evidence listed in the Government's petition " * * * nor any other conceivable evidence would suffice to satisfy the requirements set forth in Davis v. United States, * * *." Buatte v. United States, 9 Cir., 331 F.2d 848.

One day after the murder trial began, the Government obtained an indictment against Buatte charging him with assaulting Dan Secody with intent to commit murder. After the reversal of the murder conviction and the directed acquittal of Buatte on that charge, the Government moved for and obtained a dismissal of the assault charge. This was done to enable Arizona state authorities to institute an insanity commitment proceeding against Buatte in the Superior Court of the State of Arizona in and for Maricopa County.

On July 17, 1964, the superior court, after a hearing, determined that Buatte was then sane, and ordered his release from state custody. Later the same day, the United States filed a complaint again

charging Buatte with assault with intent to murder Dan Secody. On August 14, 1964, Buatte was arraigned, and defense counsel was appointed; Buatte waived his right to have the matter presented to the grand jury, and an information was filed charging him with the described assault, in violation of 18 U.S.C. §§ 1152 and 113(a) (1964).

As he had done in the murder case, Buatte raised the defense of insanity. He produced substantial evidence tending to support this defense. The burden was thus placed upon the Government to establish to the satisfaction of the jury beyond a reasonable doubt, that Buatte was sane in the legal sense at the time he committed the assault. Buatte v. United States, 9 Cir., 330 F.2d 342, 345, applying the principle expressed in Davis v. United States, 165 U.S. 373, 378, 17 S.Ct. 360. In an effort to meet this burden, the Government produced both lay witnesses and expert medical testimony.

Buatte contends on this appeal that, viewing the evidence as a whole, the district court should have held that Buatte's sanity at the time of the assault was not established beyond a reasonable doubt, and on that ground the court should have granted defendant's motion for judgment of acquittal made at the close of all the evidence.

An evaluation of the evidence bearing upon the question of Buatte's sanity at the time the assault was committed requires an understanding of the background facts. On April 7, 1962, Buatte was hitchhiking through a desert in northern Arizona. He stopped, entered the tent of Charlie Secody, and asked for a drink of water. Dan Secody, age eleven, got the water for Buatte and observed appellant put his hand on the thigh of Alice Secody, age fourteen. Alice Secody told Buatte not to bother her or she would call the police. Buatte obtained a hammer and struck Dan Secody; then he shot both children in the head.

Charlie Secody, the father, was nearing the tent and honking his horn at some

sheep which were in the road. He saw Buatte standing by his tent and, later, running on the highway and persistently hailing a truck to stop. The truck stopped, Buatte boarded, and the truck continued to the Gap Trading Post which was approximately ten miles away. At this place Buatte was taken into custody.

Buatte, when confronted with a holster which the police found in a bag he was carrying and asked about the location of his gun, replied that he had no gun and that he had found the holster while hitchhiking. He also stated that he had not shot anyone, although investigating officers had not at that time established that the children had been shot. Subsequently, police found a pistol belonging to Buatte in a tarpaulin in the back of the truck where he had ridden.

Police also found a receipt for the gun in Buatte's billfold. When confronted with the receipt defendant said he owned a gun but that it had been stolen. Buatte claimed not to be able to remember any of the occurrences for the one hour during which he left the highway, went to the Secody tent, and returned to the highway to flag the truck.

Buatte presented the basis for his defense of insanity through the testimony of several expert witnesses. The defendant also introduced exhibits showing that in 1952 and 1957 the Navy and Army, respectively, discharged him after determining that he had a psychotic condition.[1]

Dr. Charles R. Keith, testifying for defendant, stated that he and his staff had examined defendant for a period of three and one-half months starting in June of 1962. Based on that extensive examination Dr. Keith was of the opinion that Buatte was suffering from a schizoid personality disorder. He described this as a condition where the patient has few if any ties with other people, and the symptoms often appear only when a situation of stress arises. On cross-examination, Dr. Keith testified that in his experience he had never seen a schizo-

phrenic reaction which lasted only one to three hours as this one was claimed to have lasted. He also stated that generally amnesia resulting from a psychosis has an abrupt onset and termination, but that this was not true in Buatte's case. Dr. Keith could not say either that a psychosis had occurred or that one had not occurred.

Dr. Sydney Smith, a clinical psychologist, was Buatte's second expert witness. He testified that he examined Buatte on December 10, 1962, eight months after the shooting, giving him four recognized psychological tests. On the basis of his examination Dr. Smith described defendant in the following manner: a "hollow-shell man, who was incapable of appreciating ordinary feelings and the ordinary human relationships * * *"; having "a peculiar kind of blandness, a lack of anxiety about anything he has done or anything he has said, which is a part of his feelinglessness * * * a very common symptom * * * that appears in schizophrenic conditions"; being "autistic, by which we mean that he has a tendency quite frequently to be bound more closely to fantasy than he is to reality"; being "burdened with many, many strange irrational fears that intrude upon his consciousness and cause him often to be unsettled and deeply troubled, in ways that can lead him at times to have to act upon these fears in a very impulsive fashion, without much in the way of judgment"; being sometimes without ability to give any adequate recall; and being a "simple schizophrenic."

Dr. Smith testified that in his opinion the kind of fears Buatte apparently had immediately prior to the incident, arising from his effort to get off of the desert before darkness set in, and other events prior to the shooting, would have been sufficient to bring about a possible schizophrenic reaction during which defendant could not know right from wrong.

[1]. For a summary of Buatte's mental illness in the armed services as shown by the records, see Buatte v. United States, 9 Cir., 330 F.2d 342, 344.

Dr. Harrison Baker, a psychiatrist, also testifying for defendant, stated that based on his examination of Buatte he believed that defendant was a chronic undifferentiated schizophrenic. In Dr. Baker's opinion, during the time in question Buatte was in a psychotic episode of short duration, and that he then " * * * did not have any knowledge of being, of his actions, and he could not recall them, and he was not in that period able to differentiate what was real from what was not real." Dr. Baker stated that defendant could not tell right from wrong during the episode.

The Government presented two expert witnesses on the insanity issue, Dr. Richard E. H. Duisberg and Dr. William D. McGrath, both of whom are psychiatrists.

On the basis of a lengthly hypothetical question,[2] each of the two doctors gave his opinion that no schizophrenic reaction took place and that, under the hypothesized facts, the individual would know the difference between right and wrong. Dr. McGrath had never heard of a psychosis lasting only one or two hours, and Dr. Duisberg thought that such a schizophrenic state would last longer than one hour. Dr. Duisberg, as his reasons for his answer to the hypothetical question, stated that the behavior under the circumstances was too logical and that the acts following the shooting evidenced a realization that the acts of injuring the two children were wrong. He explained the amnesia as an escape from the consequences of the violent acts.[3]

There is no evidence that Dr. McGrath examined Buatte, and in any case his testimony was based solely on the hypothesized facts. Dr. McGrath gave no reasons to support his conclusion that no schizophrenic reaction occurred at the time of the shooting. The doctor testified that despite the subsequent development of amnesia, the defendant would have known right from wrong at the time of the experience.

The Government also presented evidence, through the testimony of Dr. Duisberg, tending to show that Buatte's conduct immediately preceding and following the shooting was that of a person who knew that he was doing something wrong in attacking Dan Secody. This approach by the Government was further developed by its cross-examination of defense witness Dr. Smith, although that witness reasserted his opinion that defendant did not know right from wrong at the time of the shooting. The same approach was used in the cross-examination of Dr. Baker, another defense witness.

The jury finding that Buatte was sane in the legal sense at the time of the assault should not be set aside unless we conclude that reasonable men must necessarily possess a reasonable doubt as to Buatte's sanity at the time in question. See Dusky v. United States, 8 Cir., 295 F.2d 743, 756. We do not so conclude. The weight of conflicting medical testimony is for the fact finder to determine. See Tuck v. United States, 9 Cir., 282 F.2d 405, 410.

Buatte relies on the former case in which he was charged with the murder of Alice Secody to show that the Government's evidence was insufficient in this case.[4] We have examined the record in

2. Buatte refers to the hypothetical question as being incomplete. We note, however, that in defendant's cross-examination he filled in several of the details. No other incompleteness in the hypothetical question has been called to our attention.

3. While the testimony of Dr. Duisberg was elicited by a hypothetical question, the doctor had examined Buatte on two occasions, May 18, 1962, and December 4, 1962. However, the doctor was not, as part of the hypothetical case told to rely on, nor does it appear that he did rely on, the information gained from his examinations of defendant.

4. Defendant also relies upon the cases of McKenzie v. United States, 10 Cir., 266 F. 2d 524, and United States v. Westerhausen, 7 Cir., 283 F.2d 844. In McKenzie the Government, to prove the sanity of defendant, relied entirely on the testimony of non-expert witnesses who testified that they observed nothing unusual about defendant before or after the crime. The defendant, however, offered disinterested psychiatrists who testified

the earlier murder trial. The Government there presented no evidence that a schizophrenic reaction lasts much longer than an hour. Nor in that case did the Government present through its single expert on insanity the reasoning that Buatte did not experience true amnesia or a schizophrenic reaction because his conduct preceding and following the period in question was too logical.

With the exception of Dr. Duisberg's testimony, the Government's evidence on the sanity issue at the former trial was directed to show that in the eyes of lay people for whom Buatte had worked, or who saw him prior to the shooting, Buatte was acting normally. Dr. Duisberg's testimony, in answer to a hypothetical question, that such a person "might well have known the difference" between right and wrong on April 7th, 1962, fell short of his clear cut expression of opinion in the present case.

 In our view, the evidence countering the insanity defense was substantially stronger in the present case than in the murder trial. It follows that the ruling of this court in the murder case that the Government had not sustained its burden on the sanity issue, does not stand in the way of a contrary ruling here.[5]

We conclude that the district court did not err in denying the motion for judgment of acquittal, made on the ground that the Government did not sustain its burden on the insanity issue.

 Buatte also argues that his right to a speedy trial has been violated, stating that an eighteen to thirty-two month wait before the assault trial commenced was too long. The facts concerning the delay in commencing the assault trial are set forth at the outset of this opinion.

In passing upon this contention we take into consideration the four factors stated in United States v. Simmons, 2 Cir., 338 F.2d 804, 807, which are: the length of delay, the reasons for the delay, the prejudice to defendant, and waiver by the defendant. See also Sanchez v. United States, 9 Cir., 341 F.2d 225, 228–229.

Buatte at no time voiced any objection as to the length of time between the assault and commencement of the trial on that charge. Nor did he at any time seek to have the assault case brought to trial at an earlier date. Buatte has not shown how he was in any way prejudiced by the delay between the return of the indictment and the time of trial. In fact it was on his motion that the trial date was

that defendant was insane. 266 F.2d 527–28. In Westerhausen the Government did have expert testimony before the court, but the court held that in view of the strength of the evidence presented by the defense, the Government failed to carry its burden of proof on the insanity issue. As the court said, 283 F.2d at 852:

"The quantum and nature of proof the Government must offer to take the case to a jury varies in different situations and to some degree depends upon the quantum and nature of proof the defendant offers."

5. As noted earlier in this opinion, in denying the petition for rehearing in the murder case, we stated that no "* * * other conceivable evidence would suffice to satisfy the requirements set forth in Davis v. United States, * * *." Buatte v. United States, 9 Cir., 331 F.2d 848. The quoted statement must be construed in the light of the facts and circumstances

which had been brought to the attention of the court in that case. We do not consider this statement as a decisional ruling that in another criminal case arising out of the same general incident, but involving another victim, the Government would necessarily be incapable of sustaining its burden of proof on the insanity issue. A somewhat analogous problem was before this court in United States v. Page, 9 Cir., 302 F.2d 81. We there pointed out that where the question involves the sufficiency of the evidence, each case necessarily depends on its own facts.

Buatte argues that the decision of this court in the murder case worked a collateral estoppel which prevents the Government from asserting or proving, in the present case, that Buatte was sane at the time in question. Buatte cites no authority supporting such a theory. In our opinion the concept of collateral estoppel has no application under the circumstances of this case.

extended from October 14, 1964 to December 1, 1964.

We conclude that appellant was not denied his right to a speedy trial.

 Buatte also questions the admissibility of evidence which was presented concerning the death of Alice Secody.

The evidence that Buatte shot Alice Secody was part of the overall occurrence. Moreover, even though the murder conviction was set aside and an acquittal entered, the evidence that Buatte shot Alice Secody was relevant to show that his shooting of Dan Secody was not a mistake or accident, and it was relevant to the issue of intent. See Himmelfarb v. United States, 9 Cir., 175 F.2d 924, 941. In addition, evidence of other criminal acts which involve or explain the circumstances of the crime charged is admissible. United States v. Spatuzza, 7 Cir., 331 F.2d 214, 217.

Affirmed.