## PACIFIC S. S. CO. v. HOLT.
### No. 7379.

Circuit Court of Appeals, Ninth Circuit. April 22, 1935.

E. M. Morton and C. W. Kirk, both of Portland, Or., for appellee.

Before WILBUR and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment rendered in favor of appellee, plaintiff below, in an action instituted to recover damages for personal injuries, alleged to have been caused by the negligence of appellant steamship company, while appellee was a passenger aboard appellant's vessel, the Admiral Peoples. The jury awarded appellee damages in the sum of $10,000, for which amount judgment was entered. Appellant thereafter moved for a new trial, and, as a condition to its denial, appellee remitted $4,000 of said judgment.

The facts of this case, as they appear in the record, may be stated briefly as follows:

In the late afternoon of July 26, 1932, appellee, a woman then thirty-nine years of age and apparently in good health, boarded appellant's steamship, the Admiral Peoples, at Portland, Or., for a voyage to San Francisco, having paid the necessary fare for the passage between said cities. She was assigned to stateroom 226, in which she had reserved the upper berth for the duration of said voyage. The lower berth was also occupied. This stateroom was not very large. As one enters, the double-deck berths are to the right, with a space approximately 30 inches between the forward wall and the bed. The bed extends to within about $3\frac{1}{2}$ feet of the outer wall or ship side, this space between the foot of the bed and the side of the ship being occupied by a settee. In the corner of the stateroom, opposite the settee and adjacent to the foot of said berth, is a porcelain washstand.

The berths in said stateroom are constructed on iron frames, built one above the other, and run crosswise of the vessel and at right angles to the keel thereof. The upper berth is 5 feet above the floor of the stateroom and 35 inches above the lower berth. There are two arms on the side of the upper berth at either end thereof, extending upwards from the bed rail to a point almost level with the bed when made up; their purpose being to keep the mattress in place when the ship is rolling, as well as to prevent the occupant from falling out of the berth. These arms or rails do not extend to the center portion of the side of the berth, there being an open space there, thus enabl-

McCamant, Thompson & King, of Portland, Or., for appellant.

ing the passenger to get in and out of the berth without having to climb over the iron railing. To further facilitate access to said upper berth, a bar or handhold is affixed to the wall directly opposite from the open space referred to, and about 6 inches above the top of the bed when made up.

The means provided for entering and leaving said upper berth is a movable hanging ladder, which, when in its proper position for use, is suspended or hung from the bed rail of the upper berth in the center space between the two arms heretofore described. However, when the ladder is not in actual use it is not left in this position, but is hung on the same rail on the side of the berth nearest the foot thereof, so as not to interfere with access to the lower berth. This ladder is not very large, having but three steps. The upper end of the frame of the ladder is bent into hooks or grapples, covered with rubber, to hook over the bed rail, and the lower ends are constructed so as to fit into the space or opening inside of the iron frame of the lower berth, between the bed rail and the spring mattress frame thereof, thus preventing the ladder from swinging outward when in use.

Mrs. Holt, appellee herein, testified that when she entered the stateroom the ladder was not at the side of the bed, neither in the center nor near the foot in the position which is its usual or proper place when not in use, but was hanging over the rail at the foot of the bed at a point nearest the wash-stand. The hooked ends on the top of the ladder were placed between the posts at the foot of the berth in such a fashion that the ladder could not run or slide on the frame of the bed with the fore and aft motion of the vessel. Hanging in such position there was no means of fastening the lower end of the ladder, and the same was free to swing either sideways, or outward toward the side of the vessel, depending upon its motion. Appellee further testified that she believed the ladder, so hanging at the foot of the berth, to be in its proper position for use; that she did not observe that it was movable, and gave little attention to the manner in which it was attached to the rail.

She used the ladder on the evening of the first day to enter the berth, and again on the following morning to leave it. In using the ladder in this position it was necessary for appellee to climb over the steel rail or guard at the foot of said berth. The space remaining above said rail was quite small and cramped for a person to crawl be-

tween, there being a distance of but 14¼ inches between the rail and the beams on the ceiling and a slightly larger space between the beams. Although appellee found it very inconvenient and disagreeable to get in and out of bed in this manner, she testified that she "didn't figure on moving the furniture," believing that it had been placed in its proper position for use. Appellee further testified that she did not know that the hand bar heretofore referred to, which was attached to the wall of the stateroom above the upper berth, was to assist one in getting in and out of bed, but thought it was there to hold on to in case of rough weather. Appellee testified that no one instructed her in the use of the ladder, nor did she request any instructions in this respect.

After leaving the stateroom for breakfast on the morning of July 27th, appellee did not return thereto until about 2:30 that afternoon. At this time she disrobed and prepared for bed, having decided to read and rest for the remainder of the afternoon. The record shows that by this time the vessel was on the open ocean, and the testimony of the appellee is to the effect that the ship was rolling a little, and that while she was disrobing she was "pushed this way and that" from the motion of the ship. Having disrobed, appellee entered her berth by ascending the ladder and climbing over the rail at the foot of the bed, the same as she did the night before. After lying in bed for a short time, she proceeded to leave the berth for the purpose of getting an orange. She again climbed over the foot of the bed, got on the ladder, and descended. Before she got to the bottom of the ladder and as she went to extend her foot to the floor, the boat tipped, the ladder went up, the left side of it becoming unhooked, and the appellee was thrown against the washbasin, striking the same with the lower part of her back, resulting in the injuries of which she now complains.

In her complaint appellee made no charge that the facilities provided by defendant were defective or insufficient in any respect, nor did she aver that the ladder itself was a defective appliance, but merely contends that appellant's master, officers, agents, etc., were negligent in failing to instruct her in the proper use of the ladder, and furthermore that the act of appellant's employees in leaving the ladder in the said position at the foot of the berth, in the absence of any instructions as to its proper use, constituted an invitation to appellee to

use the same while hanging in said position. Appellee further alleged that she "was without knowledge concerning vessels of any character." The record shows that the only other time that appellee had sailed was in 1919, when she made a trip from San Francisco to Portland, Or.

Appellant advances a large number of errors, alleged to have been committed by the trial court, which are set forth and argued at length in its brief. Many of these assignments relate to the refusal of the trial court to give certain instructions as requested by appellant, some attack as erroneous several of the instructions as given by the court, others assail as error the refusal of the court to grant appellant's motions for nonsuit and directed verdict, and again other assignments of error concern the alleged erroneous admission of certain testimony over objection. Complaint is also made because of the misstatement of certain evidence by the court in its instructions to the jury.

The trial court instructed the jury that the carrier in this case owed the passenger "the highest degree of care, prudence and foresight in the operation of its vessels, consistent with the proper management thereof * * *." Appellant excepted to the foregoing portion of the court's charge, contending that the degree of care imposed upon the defendant carrier, appellant herein, is that which is commonly known and referred to as ordinary care or reasonable care, and that the degree of care imposed upon the appellant by the above charge is applicable to a common carrier by water only with reference to the hull and machinery of the vessel.

After reviewing the decisions and other authorities on this subject, we are of the opinion that the learned trial judge properly instructed the jury as to what degree of care in the circumstances was owing from the carrier to the passenger in this case, and appellant's interpretation of the law in this respect is not supported by the weight of authority. On the contrary, with respect to all special perils of transportation, and all the instrumentalities of transportation, and their proper management, control, placing, and fitness, the strict rule of the highest degree of care obtains.

The discussion of the trial court in the case of Jarowski v. Hamburg-American Packet Co., 182 F. 320, 321, approved by the Circuit Court of Appeals for the Second Circuit on appeal, was as follows: "If a carrier holds himself forth as a carrier of passengers, that imposes upon him a very high measure of care, not only in the furnishing of the appliances necessary for the carrying of passengers, but also in the care and maintenance and the proper fitting and placing of those good appliances. * * *"

This court in The Korea Maru, 254 F. 397, 399, stated the rule thus: "The care required of a carrier in transporting passengers, and its consequent liability, is sufficiently stated for the present purpose under the general rule that, although the carrier does not insure that the passenger will be carried safely, still it is bound to exercise as high a degree of care, skill, and diligence in receiving a passenger, conveying him to his destination, and setting him down safely, as the means of conveyance employed and the circumstances of the case will permit."

See, also, 10 C. J. 854; The Tourist, 265 F. 700 (D. C. Me.); Kitsap County Transp. Co. v. Harvey, 15 F.(2d) 166, 167, 48 A. L. R. 1420 (C. C. A. 9). In the case last cited the plaintiff was a passenger on defendant's vessel and was injured by stepping from a platform upon which seats were arranged to the aisle which was some 10 inches lower than the platform. Speaking through Judge Dietrich, the court made the following comment on the degree of care which the carrier is bound to exercise under the circumstances: "Upon the whole, we are of the opinion that in maintaining such a floor, with the added circumstance that there were no warning signs or attendants to caution passengers, the appellant failed to exercise that high degree of care required of carriers. * * *" In a more recent case from the Sixth Circuit the court, quoting from Pennsylvania Co. v. Roy, 102 U. S. 451, 456, 26 L. Ed. 141, held that a carrier owes to passengers the duty "to observe utmost caution characteristic of very careful, prudent men," which is the exercise of the utmost human skill and foresight. Henson v. Fidelity & Columbia Trust Co., 68 F.(2d) 144, 145 (C. C. A. 6).

In support of the proposition that the court should have charged that it was incumbent upon the carrier to exercise merely ordinary or reasonable care for the passengers' safety, appellant relies upon the case of Pratt v. North German Lloyd S. S. Co., 184 F. 303; 33 L. R. A. (N. S.) 532 (C. C. A. 2), and quotes therefrom at length in its brief. In that case a passenger was injured by slipping and falling on a wet deck. There the court refused to charge that defendant owed the passenger "very great care," and

charged that it was bound merely to exercise reasonable care under the circumstances. Taking into consideration that the rule requiring carriers to exercise the highest degree of care for the safety of passengers does not extend to those comparatively trifling dangers which a passenger meets on a vessel or on a railway car only in the same way and to the same extent as he meets daily in other places and from which he habitually and easily protects himself, we believe that in the determination of this issue the ruling in that case has no application to a situation such as the one with which we are confronted in the case at bar. See Bassell v. Hines, etc., 269 F. 231, 12 A. L. R. 1361 (C. C. A. 6).

In further support of its argument in this connection, appellant refers us to a number of cases, the majority of which are from the state of New York, and which we shall proceed to examine briefly. In Kelly v. Manhattan Ry. Co., 112 N. Y. 443, 450, 20 N. E. 383, 385, 3 L. R. A. 74, the deceased, having imbibed freely of intoxicants, while descending a stairway leading from an elevated station to the street, the steps of which were very slippery due to sleet and snow, fell and sustained serious injuries. While the court held that under the law existing in that jurisdiction a less degree of care is required in the management and maintenance of the approaches to cars, such as platforms, halls, stairways, and the like, it proceeded to observe and make the following distinction: "The rule in relation to the liability of railroad corporations for injuries sustained by passengers under such circumstances as this case develops differs from that which obtains in the case of an injury to a passenger while he is being carried over the road of the corporation, and where the injury occurs from a defect in the road-bed, machinery, or in the construction of the cars, or where it results from a defect in any of the appliances such as would be likely to occasion great danger and loss of life to those traveling on the road. The rule in the latter case requires from the carrier of passengers the exercise of the utmost care, so far as human skill and foresight can go, for the reason that a neglect of duty in such a case is likely to result in great bodily harm, and sometimes death, to those who are compelled to use that means of conveyance. * * *"

A similar holding was made in the case of Ganguzza v. Anchor Line, Ltd., 97 App. Div. 352, 89 N. Y. S. 1049, largely upon the authority of the Kelly Case, supra. Likewise, among other cases cited involving similar situations and rulings, we are referred to the following: Buck v. Manhattan Ry. Co., 15 Daly, 550, 10 N. Y. S. 107, where the ground of negligence relied upon was the failure to prevent other passengers from being careless and reckless in boarding a train; Lafflin v. Buffalo & S. W. R. R. Co., 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433, where a passenger was injured in stepping from a car onto the platform; and the case of Morris v. New York Cent. & H. R. R. Co., 106 N. Y. 678, 13 N. E. 455, involving an injury to a passenger by the falling upon him of a clothes wringer placed in a rack over his seat by another passenger, a thing over which the carrier exercised no immediate control and of which it had no reasonable notice.

The only conclusion of law, therefore, which can be derived from this line of cases submitted by appellant in support and furtherance of its contention, is that the strict rule requiring the exercise of the utmost care on the part of railroad corporations to insure the safety of passengers being carried over the road does not apply in the case of approaches to the cars, the platforms, halls, stairways, etc.; and that in such cases the carrier is bound simply to exercise ordinary care, in view of the dangers to be apprehended. Regardless of what rule or rules happen to apply in different jurisdictions in this respect, suffice to say that those cases have no bearing whatever on a situation such as the one existing in the present case. Obviously, we are not dealing here with a matter which in any way can be said to involve the management or control of stational facilities and the like, and, consequently, we have no concern with the law applicable thereto. As we see them, such cases are entirely without the scope of inquiry here.

Appellant predicates error upon the refusal of the court to instruct the jury to the effect that the carrier was not charged with notice that the passenger was unfamiliar with ships or required instruction as to the proper use of the ladder in question, and that no duty devolved upon the said carrier to give instructions unless the same were requested. We cannot concur with appellant in this respect, and for the court to have so instructed the jury would certainly have been improper, inasmuch as the effect of such a charge would be to ignore all factors which might affect the duty to warn or in-

struct, and to inform the jury that under no circumstances could such a duty arise.

A careful reading of the instructions given by the court reveals that the jury were properly and adequately instructed on this point. They were informed that the carrier had a right to assume that persons who come aboard their vessels would be familiar with the way ordinary things are done and with the ordinary use of mechanical devices. The court also mentioned appellee's experience with Pullman cars (she having testified that she was acquainted with the way Pullman cars are made up, having occupied lower berths in such cars on past occasions), the fact of attendants being in waiting and the purser's office being open, the ordinary method of getting in and out of bed, and whether or not it was reasonable for her to attempt to crawl over the foot of the bed or to consider that the company would put a fixture where this ladder was found.

In this connection the following statement, appearing in 58 C. J. p. 551, § 941, might well be noted: "The vessel's duty to exercise care for the safety of passengers involves the duty of warning passengers of dangers which the ship's employees might reasonably anticipate and such as are not readily apparent to passengers, and the vessel will be liable for an injury that might well have been avoided had due warning been given. The duty to warn, however, does not extend to dangers which are as observable by, and obvious to, the passenger as to the ship's employees."

And again, at pp. 556, 557, § 951, of the same volume: "All ordinary care and skill must be exercised to see that parts and appliances of the vessel intended to be used by passengers are in a safe condition for use. In places where the presence of passengers is contemplated proper precautions must be taken to guard against injuries likely to result from their natural mistakes due to ignorance as to the condition or construction of the vessel, and it cannot be assumed that they are as familiar with the construction of vessels as experienced seamen; * * *."

See, also, Kitsap County Transp. Co. v. Harvey, supra; The Korea Maru, supra.

Whether or not the conduct of appellant in supplying the ladder and placing it where it was found was sufficiently misleading to an ordinary passenger so as to entitle him to warning, and whether or not the danger existing was obvious and apparent to such an extent as would obviate the necessity of giving instructions, were questions properly left to the jury, and for the court to have instructed the jury as to what duty, as a matter of law, was owing to the passenger from the carrier in this respect, as appellant contends should have been done, clearly and unmistakably would have constituted error. While this court does not take the position that a carrier is bound to give a course of instructions to all holders of upper berths, we do conclude, in view of the authorities referred to, that the appellant, when hanging this ladder in a place where it looked like a safe fixture, owed a duty to appellee to warn her of the danger of its use in that position and to instruct her in the proper application of it.

Appellant assigns as error the refusal of the court to instruct the jury to the effect that a verdict for plaintiff, appellee herein, could not be based on the action of appellant's servants in leaving the ladder at the foot of the bed. So, also, error is predicated upon the refusal to instruct that a verdict could not be based upon the rolling and pitching of the vessel, and, again, exceptions taken to the instructions as given by the court in this respect form the ground for other assignments of error. It would serve no good purpose to set forth in detail the requested instructions or those to which appellant has taken exception, nor to pursue the discussion to any great length. However, a careful examination of the whole instruction of the court in these particulars discloses that the situation was covered thoroughly, and a reading of those parts of the instructions not quoted by appellant, together with the few isolated portions to which exception is taken, completely disposes of its contentions.

■■ The appellant requested the court to give the jury three separate instructions on the question of contributory negligence, and for the court's refusal so to do appellant maintains error was thereby committed. Two further assignments of error are based upon the refusal of the court to give the jury certain requested instructions concerning the question of proximate cause. For purposes of expediency these two matters may be conveniently treated and considered together. The effect of these requested instructions would have been to have informed the jury that as a matter of law the plaintiff was guilty of contributory negligence in descending the ladder under the circumstances already delineated, and that such act on the part of the plaintiff was

the proximate cause of the injury she sustained, and that the act of the defendant in permitting the ladder to hang over the foot of the bed was not the proximate cause of her fall.

The record discloses that the trial court thoroughly covered the law of contributory negligence, rehearsing the defendant's charges of contributory negligence and charging that if the plaintiff was guilty of negligence which contributed to her injury "in whatsoever degree" she could not recover. It was a fair statement of the issues involved and completely covered all points in the requested instructions. Whether or not the plaintiff's use of the ladder under the circumstances in this case constituted contributory negligence on her part was properly a jury question, and it would have been an unwise undertaking for the court to have treated it otherwise.

■ So, also, the subject of proximate cause, being a mixed question of law and fact, is, in the vast majority of cases, better left to the determination of the jury. Courts, because of the difficulties surrounding this question, are usually reluctant to pronounce as a matter of law what does or does not constitute the proximate cause in a given case. They prefer to leave the decision of such cases to a jury, bearing in mind that it is essentially a question of fact that must be answered in accordance with common understanding. It is only in rare cases where the facts are undisputed and are of such clearness that the inferences deducible therefrom appear so immediately evident as to be incapable of reasonable doubt or difference of opinion that the question of proximate cause may become one of law for the court.

Appellant moved for a nonsuit on the close of plaintiff's testimony and asked for a directed verdict when the testimony was completed, and upon the denial of this motion and request error has been assigned. Appellant argues that either the motion for nonsuit should have been allowed, or the request for directed verdict granted, because there was no duty to instruct or warn appellee as alleged in the complaint, because no negligence is attributable to appellant, because appellee was guilty of contributory negligence, and that such contributory negligence was the proximate cause of her fall. These propositions have heretofore been discussed and disposed of, and from the conclusions reached therein it appears that all of such matters presented questions of fact requiring submission to the jury, and in refusing to grant these respective motions of appellant the trial court cannot be said to have committed error.

■■ During the course of the trial appellant introduced in evidence the deposition of one M. A. Sohst, the vessel's captain, wherein, among other things, he testified that he had made certain measurements of the stateroom, berths, etc.; that he found the distance from the beam on the ceiling of the stateroom in question to the foot rail on the bed to be 14¼ inches; and that the space between the said beam was slightly larger. Referring to this space, he continued to testify that while it was not altogether impossible to crawl over the foot of the bed into the berth, it was, however, a very difficult feat, and that in no event could one get over the foot of the bed at all except by means of the larger space between the said beams. It would appear that the inference which was intended that the jury should draw from this testimony was that the difficulties surrounding the act of entering and leaving the upper berth in the manner employed by plaintiff should have warned and apprised her of the fact that there was something radically wrong with the position of the ladder. Also, this testimony would tend to suggest that no reasonable person, in view of such difficulties, would be justified in assuming that such a mode of access to and from the upper berth was a proper one, or one which a normal adult passenger might be expected to use.

For the purpose of rebutting these suggestions, and in order to prevent the jury from drawing any such inference as above mentioned, plaintiff introduced a witness by the name of Mrs. Grace Cameron. It appears from the record that this witness was a passenger during the same voyage and occupied another stateroom which was admitted to be identical in character to the one occupied by the plaintiff, appellee herein. This witness testified over objection that the ladder in her stateroom was hung over the foot of the bed in the same manner as the one here in question; that she used the ladder on different occasions in said position by crawling over the foot of the bed; and that "she got over between the beams but didn't try to get over the other way."

The appellant objected to this testimony as being irrelevant and immaterial, involving collateral matter, and also as not proper rebuttal. The court overruled this objection

and appellant asserts that error was thereby committed.

As we have already stated, Mrs. Cameron's testimony was designed to rebut that of appellant's witness Captain Sohst, and was not introduced for the purpose of proving merely that similar conditions existed in other staterooms on the vessel, and that other passengers used the ladder in a like manner to that of the appellee. True, had the appellant not paved the way for the admission of this testimony by first introducing the deposition of Captain Sohst, heretofore referred to, such testimony would have been immaterial and would have involved inadmissible collateral matter as contended by appellant. However, being offered to rebut and refute particular testimony theretofore introduced by the opposing side, it became competent, and its admission was proper.

Appellant further maintains that, inasmuch as Captain Sohst did not testify that the act performed by Mrs. Holt, appellee herein, in getting in and out of her berth was impossible, but merely that it was difficult, the testimony of Mrs. Cameron to the effect that she employed similar means of access to her berth was not proper rebuttal, because the issue did not relate to whether or not the feat was possible, but merely had reference to the difficulty in performing it. Assuming for purposes of argument that appellant's position in regard to this matter is well taken, the following question arises: Is that fact alone sufficient to render this testimony inadmissible? We are of the opinion that it is not. We have already mentioned that the testimony of Captain Sohst in this connection carried with it the suggestion that the difficulties and inconvenience presented in attempting to use the ladder in the manner described were such as would tend to discourage its use in such position. Such insinuation might also tend to nullify any notion that the placing of the ladder over the foot of the bed would constitute an invitation to a passenger to use it in that position. The ultimate effect of such evidence would lead to the inference that in using the ladder in the way she did appellee was guilty of contributory negligence. To meet this obstacle it was competent for appellee to offer evidence for the purpose of showing that other passengers under similar circumstances were misled by the appearance of the ladder as was appellee. We therefore believe that the court did not commit error in permitting the testimony of Mrs. Cameron to go into the record. Particularly, do we feel that the jury were in no wise misled by its admission, in view of the fact that the trial court in its instructions limited carefully the effect of Mrs. Cameron's testimony, as follows: "The question is whether the plaintiff was instructed to use the ladder at its proper place and whether there was any negligence in failing to instruct her or in inviting her to use it where it lay at the first time she saw it; and in that connection I will say that, just because you may find from the evidence that another person used the ladder in that particular place in another stateroom, that would not be proper for you to consider as a basis for a charge of negligence. The evidence in that regard was admitted simply for the purpose of refuting the claim made by defendant that one could not crawl over the foot of the bed and for the purpose of showing that it was possible to crawl over the foot of the bed." Moreover, the entertaining of collateral issues presents difficulties which are sometimes best dealt with in a purely practical way, having regard to the exigencies of the particular case. In such cases it becomes a matter of discretion with the trial court, subject, of course, to review in case of abuse.

■ Appellant excepted to the following portion of the court's charge to the jury: "* * * There is some suggestion in the testimony that the hooks may have been covered by the bed clothes." The grounds of appellant's objection, upon which the exception must be based, do not appear in the record. An exception or objection which does not state the grounds therefor is insufficient to raise any proposition of law for the consideration of this court. See Sacramento Suburban Fruit Lands Co. v. Loucks (C. C. A.) 36 F.(2d) 921; State Life Ins. Co. v. Sullivan (C. C. A.) 58 F.(2d) 741, 744. See, also, First Nat'l Pictures, Inc., et al., v. Robison (C. C. A.) 72 F.(2d) 37, 39, and cases cited therein.

■ The appellee introduced as a witness a physician named Dr. Rockey, who testified that he had examined her on two different occasions, approximately five or six weeks after her fall on the appellant's vessel July 27, 1932. He then proceeded to testify that on June 1, 1933, he performed an operation on her, the hospital operative record (Defendant's Exhibit B) showing the operation to have consisted of a complete hysterectomy for multiple fibroids and carcinoma of the cervix. It appears that the examina-

tions prior to this operation, as well as the actual operation itself, did not disclose the presence of a cancer. However, two or three days after the operation the hospital pathologist, who examines all tissues that are removed, reported to Dr. Rockey that on microscopic examination of the neck of the womb, or cervix, there was found a cancer of very great malignancy. This report Dr. Rockey subsequently confirmed upon examination of the same tissues himself.

Basing his opinion upon the knowledge he acquired from his examinations of the appellee, together with his operative and post-operative findings, Dr. Rockey testified that he believed that the cancer referred to was present in appellee's womb at the time of her accident on the appellant's vessel; that as a result of the said accident the cancer was torn into and caused to bleed; that such injury to the cancer would be very likely to cause it to spread, not only locally but throughout the body generally; and that appellee's normal expectancy of life was thereby materially decreased.

Appellant interposed a number of objections in connection with the examination of Dr. Rockey. These objections are made the basis of five separate assignments of error. The principal contentions relied upon are: First, that it was error to permit Dr. Rockey to offer opinion evidence with reference to the physical condition of appellee at the time of her fall based upon examinations which were made several weeks thereafter; and, secondly, that the court erred in permitting Dr. Rockey to build an inference on an inference—in other words, that it was error to permit him to infer from the facts in his possession and from the testimony that plaintiff had a cancer on the 27th of July, 1932, the day of the accident, and then to build upon this inference the further inference that the fall aggravated the cancer.

In this connection the court gave the jury the following instruction: "Now there is one charge as to damages which I will withdraw from you at this time, the charge that a malignant tumor existed at the time of the accident and that the condition thereof was aggravated by the accident fails. As I look upon it, all the evidence upon that subject is speculation; there is no one who does or can testify that as an actual fact the tumor did exist at the time of the accident. * * *"

Appellant insists that the above withdrawal of the court was not sufficiently specific to cure whatever error was committed by the admission of the testimony complained of. To this position we cannot assent. The charge from the court that the jury should not consider the evidence relative to the existence of the malignant tumor, or cancer, at the time of appellee's fall and the effect of said fall thereon, was equivalent to striking such evidence out of the case, and the original error was thereby cured. Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141, 145; Turner v. American Security & T. Co., 213 U. S. 257, 29 S. Ct. 420, 53 L. Ed. 788, 792; Fidelity & Casualty Co. of N. Y. v. Griner, 44 F.(2d) 706, 709 (C. C. A. 9).

The judgment of the District Court is affirmed.