## LOGUE v. CAPE COD S. S. CO.
### No. 788.

District Court, D. Massachusetts.
Dec. 19, 1939.

Wm. H. Lewis, Jr., of Boston, Mass., for libelant.

Thomas H. Walsh, of Boston, Mass., for respondent.

FORD, District Judge.

This is a suit in admiralty in personam in which the libellant seeks to recover for personal injuries alleged to have been received as a passenger while walking down a stairway leading from the saloon deck to the main deck aboard the steamship "Steel Pier," a vessel owned and operated by the respondent company.

Findings of fact and conclusions of law appearing herein are intended as a compliance with Admiralty Rule 46½, 28 U.S. C.A. following section 723.

The libellant was a passenger on the steamship "Steel Pier" due to sail at 10 A. M., from Boston to Provincetown, on August 15, 1938, and she testified that about ten minutes before sailing time, in company with a Mr. Friedman who was a witness at the trial, she was descending a stairway consisting of nine steps leading from the saloon deck to the main deck in the forward part of the boat, and as she was about to step off the platform to the first step of said stairway and while her left foot was poised, she was struck on the right shoulder from behind and caused to fall in such a manner that she did not come to a stop until she about reached the fourth step from the bottom; that when struck she was about the middle of the first step, and although there was no direct evidence as to the width of the steps, it appeared from the photograph introduced at the trial that the first step was about seven feet wide and the remaining steps were of proportionately greater width as they approached the main deck, because of the fact that the steps of the companionway extended to a bannister which curved outward on either side as it approached the lower deck. The bottom step was about nine feet wide. It appeared from the evidence there were two short flights of four steps each that led down at right angles from the saloon deck to the platform of the stairway, one from the deck on the starboard and the other from that on the port side of the steamer. Before the libellant reached the platform from which she was about to step down before being struck she had descended the small flight on the port side and as she was coming down the latter she observed a person that she said was an officer coming hurriedly down the short flight of steps on the starboard side. She stated that this person was dressed in a blue serge suit and a cap with a white top on it and she did not observe whether there were any bars or insignia on his uniform; that at the moment she was struck she could not observe this person, but stated that he came in contact with her and she was bumped down the stairs, hitting the back of her neck and head. After the fall, she was very nervous and was assisted by the witness Friedman, her escort, to a chair at the bottom of the stairs and from there was assisted to the first-aid room by the stewardess where an injury to her leg was attended to. She pointed out in the courtroom at the trial, as resembling the man who bumped her, one Philip J. Smith, the purser of the vessel, and who testified later in the trial. She testified further that on this same day she told the first officer of the ship that she was injured and at that time pointed out the purser Smith as the man who pushed her down. She said the purser said nothing in reply and she did not know whether the first officer said anything at this point. However, she testified that when she described the man who bumped her to the first officer, he replied that the description resembled the purser, and that it was as a result of this that the purser was brought into her presence.

On cross examination, she testified that the person who knocked her down was just turning around from the saloon deck onto the short flight of steps on the starboard side when she had reached the platform; that she stopped on the platform about the middle and at that time her escort, Friedman, was several steps in advance of her and going down the steps; that Smith, the purser, looked like the man who came from the saloon deck, but she could not "swear" he was the man; that she could not remember the exact time she talked with the first officer but said it was sometime later in the day of the accident. She also said that she did not, in her description of the officer that struck her, give any idea of his age, whether he was old or young, but stated he was an officer. She further stated that she did not observe the man she alleged knocked her down after she got on the platform of the stairway; that she did not see him on the platform at all, but last saw him as he swung around from the saloon deck onto the short flight of steps leading down to the platform.

The witness Friedman, who testified for the libellant, said that the vessel was crowded; that he preceded Mrs. Logue down the stairs by about three or four steps and his back was turned to her at the time of the accident; that when he reached the fourth or fifth step from the bottom he heard Mrs. Logue shout, "Harry!" He stopped short and an officer of the boat ran by him, turned to the right and disappeared. About the time he heard Mrs. Logue call he felt something strike him on the shoulder which turned out later, to be the libellant's shoe which she wore at the time. When he turned around he saw Mrs. Logue sitting on the steps and he picked her up and sat her on a chair. He then located a stewardess who took her to the first-aid room. He did not testify in any way as to the cause of the libellant's fall. He further said he got some information from the special officer as to the identity of the first officer and later talked to the latter about the accident; that the first officer said he and the captain knew of the accident and, at this time, Mrs. Logue described the man who bumped her and that the purser of the vessel, whether sent for or not he did not know, came into the conference and Mrs. Logue said, "that looks just like the man" and the purser denied it. Later in the trial, he positively identified the purser, who was present in the courtroom, as the officer he saw hurrying by him just after Mrs. Logue's fall; that this conversation with the first officer took place some two hours after the vessel left the dock.

On cross examination, this witness testified he could not see what happened to Mrs. Logue in the position he was, and the talk with the first officer took place about eight hours after the accident. The witness identified in the courtroom as the first officer, one Thurlow, president of the respondent company, who testified later, and which I find to be a fact, that he never at any time served as an officer aboard this vessel. The first officer was also present in the courtroom at the time of this identification.

The respondent produced, among others, as witnesses, the two special officers of the vessel and both denied they ever talked with the witness Friedman as to the identity of the first officer.

One of the stewardesses of the boat testified that the libellant immediately after the accident told her that an officer of the boat, a man in uniform, pushed her down, and that at that time there were a number of people on the stairs.

Several uniformed men of the vessel, although it did not appear that these were all the uniformed men on it at the time of the accident, testified they knew nothing about the accident.

The first officer denied that he ever had the conversation alleged to have taken place between him and Mrs. Logue, or that he knew anything about the accident until a week before the trial. He also testified that it was the duty of the purser to take charge of notices of accidents and reports, except those due to faulty equipment or the discourtesy of the crew, and the latter types would be recorded in the log by him. The log was introduced in evidence and there was no entry of any accident to the libellant.

The steward of the vessel, when called, said he talked with Mrs. Logue soon after the accident and she stated that a man in uniform, like the one he was wearing, an officer of the vessel, pushed up against her and caused her to fall. The steward stated that he made a memorandum of this, but omitted to include in it the fact that "a man in uniform like the one he was wearing" caused the accident. He testified that he turned this memorandum over to the purser who in turn, as was his duty, made out an accident report, which is referred to later. The steward further testified that he asked the libellant, and the libellant admitted this, whether or not she could tell it was an officer of the vessel or a delivery man in uniform who knocked her down. However, there was no evidence at all introduced showing that delivery men from outside organizations with uniforms used this staircase on the day of the accident.

The purser testified he was 68 years of age; that he sold tickets on the dock until just before the gangway was taken in and the ship sailed and, next to the ticket taker on the dock, was the last man aboard; that his office is on the aft part of the ship on the port side and he went on board, on the day in question, by way of the gangplank in the same manner as the other passengers, of whom there were 1,600 on the day the accident occurred; that after passing over the gangplank, he went down the starboard alley and across the saloon to his office which was situated in the aft part of the ship on the port side and remained there two hours making up his accounts. He said he never saw the libellant on the day in question and did not in any way strike

or push her on the stairway. He further testified that it was not necessary for him to use that stairway in any way for the purpose of getting to his office. He stated he got a report from the steward and made a report, which it was his duty to do. The report was substantially as the steward made it to him, except that where the report called for whatever statement was made by the injured person, there were these words, "said during attendance that she stepped aside to let party by and lost her balance." But, it might be said in passing, that there was no such statement in the report given by the steward to the purser.

The captain-pilot of the vessel had no knowledge whatsoever of the accident.

■ In view of the conclusion reached herein that no officer or agent of the respondent is chargeable with negligence, the burden of proving which is upon the libellant, it is unnecessary to determine whether the respondent was bound under the circumstances of this case to exercise the highest degree of care consistent with the nature and extent of its business in transporting the libellant safely, or merely ordinary care in fulfilling that obligation. Cf. Pacific Steamship Co., v. Holt, 9 Cir., 77 F.2d 192; Bassell v. Hines, 6 Cir., 269 F. 231, 12 A.L.R. 1361; Pratt v. North German Lloyd Steamship Co., 2 Cir., 184 F. 303, 33 L.R.A.,N.S., 532; Carlson v. Boston & Maine Railroad, 269 Mass. 60, 61, 63, 168 N.E. 171; Simmons v. New Bedford, Vineyard & Nantucket Steamboat Co., 97 Mass. 361, 367, 368, 93 Am.Dec. 99; Kelly v. Manhattan Railway Co., 112 N.Y. 443, 20 N.E. 383, 3 L.R.A. 74.

■ The libellant has practically placed all her "eggs in one basket." She contends in her proof and her argument on the brief, that it was the purser of the vessel who caused her to fall. The preponderance of the evidence is to the contrary. She stated that the accident happened at 9:50 A. M., at the latest, ten minutes before sailing time, and I find as a fact that the purser at that time was on the wharf selling tickets and did not board the boat until just before the vessel sailed at 10:01 A. M. His duties carried him direct to his room in the after part of the ship and the stairway upon which the accident happened was located in the forward part of the ship. He had no need to use the stairway, and I find he did not on the day the libellant fell. Further, the purser was a man approaching 70 years of age and, from my observation at the trial, he was not the type of man to rush down a stairway in the manner described by the libellant, and there was no evidence upon which to base any reason for his doing so. The libellant and her witness were mistaken in their identification that it was the purser of the ship who caused this accident.

■ Although the libellant contended it was the purser who caused the accident, and, because of her failure to prove that it was weakens her position badly, yet, because of the fact, which is not in dispute, that she stated to the stewardess of the vessel immediately after the accident that "an officer pushed her down" and that she honestly believed that it was an officer of the boat who bumped her, it should be determined whether there was sufficient evidence in the case to warrant a conclusion of fact that some other officer or servant of the respondent caused the accident. Here, again, the libellant does not sustain the burden imposed on her. The only one that she connects with the fall was someone who she testified was an officer, based on the fact he had on a blue serge suit and a cap with a white top on it. And Friedman further testified that just at the time the accident happened an officer passed him and disappeared to the right of the stairway. Assuming it could be found from this evidence it was an officer, engaged in the performance of his duties, that she saw just turning from the saloon deck when she was on the platform, yet she said that when she was on the platform of the stairway she did not see this person on the platform. Her back must have been turned toward this person when she was struck, or she was otherwise in such a position that she could not observe him. There was no direct evidence introduced either by her or her witness that this person bumped her, nor was there sufficient evidence, considering the position of both, from which it could be fairly inferred that he did. I find as a fact, as was testified to by the stewardess, that there were other persons on the stairway at the time who were in a position to bump her. The libellant's conclusion that it was this person who struck her was merely surmise on her part, and it is my opinion that she came to this conclusion because she had seen him up above about to turn from the saloon deck and was later informed by the witness Friedman that an officer had passed down the stairway. And, in this

connection, it is also not probable that an officer of the boat, if he did bump her and knock her down, would have disregarded his obligation to render her some assistance. The libellant has not proved her case.

I cannot leave this case without feeling that a confused picture of the circumstances surrounding the accident suffered by the libellant has been presented to the court. The testimony of the libellant and her witness was not particularly helpful or convincing. This was due in part probably to the nervousness from which the libellant suffered at the time of the accident and this militated against her in her efforts to sustain the burden imposed upon her in the proof of her case. It was unfortunate. And, on the other hand, I cannot refrain from pointing to the efforts of some of the witnesses of the respondent to suppress the true story of this accident. Both the steward and the purser, in their reports, attempted to eliminate any evidence that it was an officer of the boat who caused the libellant to fall. And there were evidences of lack of frankness as to the facts on the part of the respondent at the trial. But these circumstances did not aid the libellant in sustaining the burden incumbent upon her.

It is with considerable reluctance that I am constrained to conclude that the libellant has failed to prove by a fair preponderance of the evidence that an officer or agent of the vessel was guilty of negligence toward her.

The requests of the parties for findings of fact and rulings of law, so far as they are consistent with the above, are granted, and to the extent they differ from the above, are denied.

Judgment for the respondent, without costs.