**Fred E. HAMILTON, Libelant,**

v.

**NASSAU, her engines, etc., Respondent,**

and

**L. C. Francisco Perrilli, Claimant.**

United States District Court
S. D. New York.

Feb. 10, 1955.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, proctors for libelant, Arthur O. Louis, New York City, J. Edwin Carey, New York City, advocates.

Kirlin, Campbell & Keating, New York City, proctors for claimant, Joseph M. Cunningham, Robert P. Hart, New York City, of counsel.

THOMAS F. MURPHY, District Judge.

This libel having been tried the following are made

### Findings of Fact

1. At all times hereinafter mentioned libelant was a citizen of New York and resident within this judicial district, and respondent a vessel under Panamanian registry within jurisdiction of this court, engaged as a common carrier of passengers for hire.

2. On or about April 7, 1953, libelant became a passenger on respondent S. S. Nassau and paid the agreed fare for transportation from Nassau, Bahama Islands to New York.

3. On that date, libelant was assigned to the upper berth in Cabin No. P-55. The room had in addition a lower berth and two clothes cabinets, one at the foot of the berths and the other near the door.

4. In the morning of April 9, 1953, while descending by means of a ladder from his upper berth, libelant fell and sustained injuries in and about his head and second lumbar vertebra.

5. The proximate cause of libelant's injuries was his own fault in descending with his back rather than his face to the ladder, in failing to move the ladder from the corner or foot of his berth to its side, in failing to summon the attendant or room-steward by an available push-button either to move the ladder or to assist libelant in his descent, and in doing or omitting all of these with full knowledge of the pitching and rolling of the vessel immediately prior to his descent.

6. No fault or unseaworthy condition of the vessel was the proximate cause of libelant's injuries.

### Discussion

The libel alleges that libelant's "injuries were caused solely by the unseaworthiness of the S. S. Nassau and the fault and negligence of the said vessel, her owner, officers, crew, agents, servants and employees in that safe, secure,

adequate and seaworthy ways, means and equipment were not provided and furnished to libelant by which to descend from his said berth. The ways, means and equipment provided and furnished or available to him from time to time were not safe, secure, adequate and seaworthy but on the contrary were unsafe, insecure, inadequate, unseaworthy, dangerous and defective, * * *."

Libelant testified that at no time did he see a ladder in his stateroom. On the first evening libelant ascended to his berth by means of a chair, according to his testimony. Thereafter libelant claims that he went to and from his berth by means of a "grid" or "lattice work". This was described by libelant as a metal rod attached to the footboard of his bed as well as to the bulkhead, and extending between it and a cabinet containing the clothes of his room-mate, the witness McTighe. This "grid" was attached by means of some circular steel ring or welded ferrule at the top of the vertical members of the "grid" so that it could not be moved effectively from the foot to the side of the bed. On the day of the accident, April 9th, libelant asserts that he descended and ascended this "grid" early in the morning without incident. Immediately prior to this descent, libelant testified that he discussed the bad weather condition and pitching and rolling of the vessel with his room-mate. About 7:30 a. m. libelant undertook a second descent by means of the same "grid". This he did, according to his testimony, by inserting his heels into the horizontal bar on the "lattice work" so that he faced the bulkhead of the adjoining room forward. This frontal as opposed to backward position in descent was attributed by libelant to the necessity of holding a swinging cabinet door to prevent its hitting him. While thus descending, libelant testified that he fell to the floor, grasping a coat hook on the bulkhead which remained in his hand after the fall. There is no contradiction that injuries in and about libelant's head and second lumbar vertebra were sustained. Libelant also testified that there were neither berth lights nor push-buttons to summon an attendant.

The preponderance of credible evidence from employes of the vessel as well as from disinterested sources such as libelant's room-mate and photographs of the stateroom contradict libelant's testimony on numerous material matters. This evidence is consistent to the effect that there was a ladder in the stateroom. It was made apparently of aluminum and had gooseneck hooks at its top for attachment to the upper berth. There was no "grid" or "lattice work". According to libelant's room-mate, the witness McTighe, who conscientiously made two statements, one for each side in this case and who gave testimony entitled to the utmost credibility, libelant used this ladder at the foot of his upper berth to descend on the first morning of the voyage. On the ill-fated descent on the second morning, the ladder in the same corner position was used again by libelant, according to the witness McTighe. Moreover, the credible evidence is consistent that there were berth lights and a push-button in the stateroom, and in fact the steward was summoned by the witness McTighe immediately after the accident by means of such push-button.

In the light of all of the credible evidence it is clear that the proximate cause of libelant's fall and consequent injuries was neither the unseaworthiness nor fault of the vessel in failing to provide a ladder for safe descent but rather the fault of libelant himself in undertaking his descent with his back and not his face to the ladder, in failing to move the ladder from the corner or foot of his berth to its side, in failing to summon the attendant or steward by the available push-button either to move the ladder or to assist libelant in his descent, and in doing or omitting to do all of these with full knowledge of the pitching and rolling of the vessel immediately prior to his descent.

After close of trial, it was libelant's contention that the unseaworthiness and fault of the vessel consisted of failure

to place the ladder, previously considered non-existent, at the side of libelant's berth and keeping it there, in not having hand-holds, and in maintaining a cabinet door in such defective condition that it did not remain in a closed position when the vessel rolled. There is also intimation, by reference to a case decided by the Court of Appeals in the Ninth Circuit,[1] that the vessel was at fault in failing to warn properly the libelant.

This considerable modification of the theory of libelant's claim, at odds with libelant's own testimony and presented when it was at the close of the case, must nevertheless be appraised in the light of the credible evidence.

■■■ A carrier of course is not "bound to give a course of instructions to all holders of upper berths".[2] Whether or not the placing of the ladder in the stateroom entitled libelant to warning concerning danger of its obvious and apparent misuse is we think properly a question of fact to be resolved in the light of the circumstances of this case. Not the least relevant of these circumstances is that libelant was an experienced traveler, an attorney admitted to practice in the State of Washington many years ago, a successful insurance sales supervisor for twenty years, a teacher of insurance law and obviously above the average in intelligence and discernment. As a matter of fact, it is clear that the danger of improper use of the ladder in question was at least as obvious to libelant as it would be to the hypothetical man of ordinary prudence.

The allegedly defective cabinet door has not been shown to have proximately caused libelant's fall, especially in view of the position of the leg of the ladder after the accident that would have prevented its swinging.

Necessarily in view of the extremely limited space in the stateroom, the ladder giving access to the upper berth could reasonably be of movable design. It cannot be said as a matter of law in view of the availability of the room steward upon use of the push-button and the fact that the ladder could be adjusted by the libelant himself, that failure of the vessel to "keep" the ladder at the side of the upper berth at all times was in any way negligent or made the vessel unseaworthy.

■■■ In view of the conclusion that no officer or agent of the vessel is chargeable with negligence, the burden of proving which is upon libelant, it is unnecessary to determine whether the vessel was bound under the circumstances of this case to exercise the highest degree of care consistent with the nature and extent of its business in transporting the libelant safely, or merely ordinary care in fulfilling that duty.[3] Similar considerations make unnecessary choice as governing law that of the forum, on one hand, urged by libelant, or that of Panama, on the other, insisted upon by the claimant. In this connection in passing it would appear that the law of the flag of the vessel, when only a single vessel and flag are involved, should govern a tort claim occurring outside the territorial waters of any sovereign.[4] For like reasons too it is not necessary to consider whether any strong public policy of the United States forbids choice of a civil law doctrine such as that of Panama, that does not embody the common law rule of *respondeat superior*.

The following are made

### Conclusions of Law

1. This court has jurisdiction of the parties, vessel and subject matter of this suit.

1. Pacific S. S. Co. v. Holt, 77 F.2d 192.

2. Id. at page 197.

3. Cf. id.; Bassell v. Hines, 6 Cir.; 269 F. 231, 12 A.L.R. 1361; Pratt v. North German Lloyd Steamship Co., 2 Cir., 184 F. 303, 33 L.R.A.,N.S., 532; Kelly v. Manhattan Railway Co., 112 N.Y. 443, 20 N.E. 383, 3 L.R.A. 74; Logue v. Cape Cod S. S. Co., D.C.D.Mass., 30 F.Supp. 606, 609.

4. See Lauritzen v. Larsen, 345 U.S. 571, 585, 73 S.Ct. 921, 97 L.Ed. 1254; Restatement, Conflict of Laws §§ 406, 410 (a) (1934).

2. Libelant has failed to sustain his burden of proof by a fair preponderance of the credible evidence that the claimant vessel was negligent in any manner or unseaworthy and that libelant's injuries were proximately caused by such negligence or unseaworthiness.

3. The libel is consequently dismissed.

Decree accordingly.