GREAT EASTERN FUEL CO., Inc.,
Libellant,

v.

TANKER HYGRADE NO. 26, INC.,
Respondent.

TANKER HYGRADE NO. 26, INC., as
owner of THE Tank Barge HY-
GRADE NO. 26, Libellant,

v.

GREAT EASTERN FUEL CO., Inc.,
Respondent.

Nos. A–20705, A–20756.

United States District Court
E. D. New York.

Jan. 27, 1961.

Mendes & Mount, New York City, Alfred A. Lohne, New York City, of counsel, for Great Eastern Fuel Co., Inc.

Foley & Martin, New York City, Thomas J. Irving, New York City, of counsel, for Hygrade No. 26.

John J. Kennelly, New York City, Edward H. McAloon, New York City, of counsel, for respondent Great Eastern Fuel Co. Inc.

MISHLER, District Judge.

The above actions brought in admiralty, arising out of the same set of facts, were tried together by this Court without a jury. The Court tried only the issue of liability.

The claim stated in the first libel is by the owner and operator of a fuel dock and tank farm, located at Newtown Creek in Brooklyn. Libellant states that the Tank Barge Hygrade No. 26, carrying a cargo of No. 6 bunker fuel arrived in Newtown Creek on January 21, 1958, at approximately 7:30 P.M., at libellant's dock. At about 7:30 P.M., the pumps of the tank barge commenced discharging fuel into tanks A-1 and A-2 of libellant. After approximately one and one-half hours of pumping, an elbow on top of tank D-1, owned and maintained by libellant, fractured, causing the oil to spill all about the libellant's tank farm area, causing the damage set forth. Libellant

states that the negligence of the respondent was that respondent's employees were incompetent, inefficient and inattentive to their duties, in failing to observe the fracture and failing to take the necessary action to shut off the barge's pump; libellant further states that there was a duty on the respondent's employees imposed by Coast Guard Regulations, which will hereinafter be referred to.

The second libel asks for damages to the vessel by reason of the negligence alleged, in that the respondent failed to properly maintain and inspect the shore pipe line.

The parties are in substantial agreement on most of the material facts. The parties agree that pumping of the oil by the tank barge did not cause the fracture. When the tanker docked at the tank farm, the fuel line of the barge was connected to the installation provided by Great Eastern. Mr. Georges, an employee of Great Eastern, checked the quantity of fuel in the barge's tanks and then opened the valves for delivery of the fuel oil to tanks A-1 and A-2. The valve to tank D-1 was between the subject elbow and the tank. In the pumping operation, while the fuel was being delivered to tanks A-1 and A-2, pressure was being exerted in the fuel line into tank D-1 and against the elbow of tank D-1. The elbow should have been able to withstand a pressure produced at the pumps of the tank barge of up to one hundred pounds; at the time of the occurrence made the subject of these actions and during the pumping operations, at no time was the pressure produced in excess of fifty pounds. Pumping operations were commenced at the signal of Mr. Georges and after he had opened the valves which were on Great Eastern's installation. All the installations, except the pump on the tank barge and the fuel pipe to the shore installation, was owned, operated and controlled by Great Eastern.

The only point of factual difference between the parties is the time difference between the occurrence and shutting off of the tank barge's pump. Great Eastern offered testimony that the spray of oil through the fracture continued for approximately 15 minutes. Mr. Georges testified that he made various efforts by whistling, calling and throwing stones at the tanker to attract attention to the defect; finding it difficult to approach the barge directly because of the flow of oil, he had to take a circuitous route to the captain's quarters on board the vessel; and the captain finally shut off the pumps. Libellant, in the second action, Tanker Hygrade No. 26, Inc., hereinafter referred to as Hygrade No. 26, offered the testimony of Mr. Dahl who was mate on board the evening of the occurrence. He testified that it was his duty to supervise the functioning of the pump; he noticed a sudden drop in pressure; he immediately went on board and noticed the spray and thereafter descended to the pump room where he met the captain who already was on his way down to the engine room to shut off the pump. The entire lapse of time, Mr. Dahl testified, was approximately three minutes from the time he saw the drop in pressure to the time the pump was turned off. In a statement made on August 3, 1960, Mr. Georges estimated the lapse of time, from the first time he noticed the spray of oil until the time the pumps were shut off, to be " * * * anywhere from three to eight minutes." Exhibit D.

Great Eastern urges that Tanker No. 26 was negligent in failing to observe Section 35.35-1 of the Rules and Regulations for Tank Vessels, promulgated by the United States Coast Guard. The Section reads in part as follows:

"35.35-1 Men on Duty—T.B./All. A sufficient number of the crew shall be on duty to perform transfer operations."

The Court finds that, upon all the evidence, Tanker No. 26 did not violate the Regulation aforementioned.

The Court finds that Great Eastern has failed to sustain its burden of proof to support the claim stated in its libel in first action.

In determining whether Tanker No. 26 has sustained its burden in the second

action, the question of the applicability of the doctrine of res ipsa loquitur, or the propriety of any other inference of negligence that may properly be drawn from the established facts arises.

*The Doctrine of Res Ipsa Loquitur*

■ There is little question that the doctrine of res ipsa loquitur is applied in admiralty. Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 92 L.Ed. 468; Mississippi Valley Barge Line Co. v. Cooper Terminal Co., 7 Cir., 1954, 217 F. 2d 321, 323; Geotechnical Corp. of Delaware v. Pure Oil Co., 5 Cir., 196 F.2d 199, 205. The applicability of the doctrine becomes quite evident when we understand that the doctrine is a rule of evidence. It has been called a "common-sense appraisal of the probative value of circumstantial evidence". See Foltis, Inc. v. City of New York, 287 N.Y. 108, 116, 38 N.E.2d 455, 460, 153 A.L.R. 1122. In Foltis, Inc. v. City of New York, supra, the Court said 287 N.Y. at page 116, 38 N.E.2d at page 460:

> "The doctrine merely means that certain occurrences contain within themselves a sufficient basis for an inference of negligence, and it does not differ from ordinary cases of circumstantial evidence except in the respect that the facts and circumstances from which the inference of negligence is drawn are immediately attendant on the occurrence."

■ In this case, all the elements from which the inference of negligence may properly be drawn are present. Great Eastern urges that since the tank barge pump was in the control of Tanker No. 26, that the inference should not be drawn. The Court disagrees with this premise. The damage claimed is based upon the failure of Great Eastern to properly maintain the installation, including the pipes and the elbow in question. The negligence that the Court infers from the facts was the failure to properly maintain the lines, including the fractured elbow. The omission occurred at a time prior to the pumping operation. The fuel lines, thru which the fuel flowed, and the elbow were exclusively within the control of Great Eastern, prior to the pumping operation.

Prosser on Torts, Sixth Edition, § 42, discussed the necessity of "exclusive control" as a necessary element in the application of the doctrine of res ipsa, at page 205, as follows:

> "This element usually is stated as meaning that the defendant must be in 'exclusive control' of the instrumentality which has caused the accident. The strict and literal application of this formula has led some courts to ridiculous conclusions requiring that the defendant be in possession at the time—as in the Rhode Island case (citing Kilgore v. Shepard Co., 1932, 52 R.I. 151, 158 A. 720), denying recovery where a customer in a store sat down in a chair, which collapsed. Of course this is wrong; it loses sight of the real purpose of the requirement in an attempt to reduce it to a fixed rule. 'Control', if it is not to be pernicious and misleading, must be a very flexible term. It is enough that the defendant has the right of control and the opportunity to exercise it. * * *"

At page 206, the author continues:

> "Some courts have said that it is enough that the defendant was in exclusive control at the time of the indicated negligence. It would be far better, and much confusion would be avoided, if the idea of 'control' were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it."

Here, Great Eastern had exclusive control over the instrumentality prior to the pumping operation, and at the time of the pumping operation actively controlled and directed the flow of the oil thru the pipelines. Mr. Georges testified that he directed the flow of the oil into tanks A-1 and A-2 by opening the valves to those

tanks and kept the valve to tank D-1 closed; Mr. Georges gave orders for the commencement of the pumping operations. Having excluded the flow of the oil into the pipes as causing the fracture to the elbow or contributing thereto, it cannot be said that the control of the pump by Hygrade Tanker No. 26 in any way interfered with the exclusive control of the instrumentality that caused the damage.

The burden of explanation rests with the respondent Great Eastern. Citrola v. Eastern Airlines, Inc., 2 Cir., 264 F.2d 815, 817. Great Eastern offered the testimony of the contractor who installed the fuel lines and the elbow. He testified that the lines and the elbow were installed some months prior to the occurrence. The witness testified that in his opinion the lines were properly installed. He had no opinion as to the cause of the fracture.

Tanker No. 26 offered the testimony of an expert, who testified that the cast iron elbow used in the installation was imprudent, since cast iron is brittle. Great Eastern failed to produce the elbow. The explanation made by Mr. Hillman, the plant manager, was that he disposed of the elbow because it was in the way. He testified that at the time he disposed of the elbow, he knew litigation was pending; and he could not identify the officer or other person in power who directed the disposition of the elbow.

The Court finds that Great Eastern's explanation as to the failure to produce the fractured elbow is insufficient. Waterman S. S. Corp. v. United States S. R. & M. Co., 5 Cir., 1946, 155 F.2d 687. The Court infers from this failure that if the elbow were produced, it would have disclosed facts adverse to respondent Great Eastern.

In Colvin v. Kokusai Kisen Kabushiki Kaisha, 5 Cir., 1934, 72 F.2d 44, the injury was caused by a defective rope which broke. The failure to produce the rope was discussed by the Court in the following language, at page 46:

"We think it cannot be doubted that the failure to produce the rope

was a matter for the serious consideration of the District Judge, and that it is to be considered by us in connection with all of the other evidence * * *."

To the same effect, see The Vulcan, D.C., 60 F.Supp. 158; Long Island Railroad Company v. New York Central No. 25, 2 Cir., 182 F.Supp. 100, 103; Wigmore on Evidence, Third Edition, Volume 2, § 285, page 162.

This decision constitutes the findings of fact and conclusions of law.

Submit judgment in the first action in favor of Tanker Hygrade No. 26, Inc., and against Great Eastern Fuel Co., Inc., dismissing the libel.

The trial on the issue of damages in the second action is set down for Thursday, February 2, 1961, at 10 A.M.