Willie Irving **TALTON**, Libelant,

v.

**UNITED STATES LINES COMPANY**, Respondent.

United States District Court
S. D. New York.
March 23, 1962.

Carlton A. Walls, New York City, for libelant.

Kirling, Campbell & Keating, New York City, for respondent; Daniel J. Dougherty and Thomas R. McLoughlin, New York City, of counsel.

FEINBERG, District Judge.

Libelant, Willie Irving Talton, while a passenger aboard respondent's vessel, the S.S. United States, was injured under the circumstances set forth below. The action is in admiralty, and I find that this Court has jurisdiction over the parties and subject matter of the action.

On December 1, 1957, some time before dawn, Mr. Talton arose from his bunk and walked to the bathroom which he shared with three other passengers in cabin B–137. The vessel was passing through rain squalls and was rolling and pitching in a moderate sea. As Mr. Talton approached the lavatory door, the ship lurched. He threw his hands forward, inadvertently putting his right thumb in the hinge of the door. The door then slammed shut, fracturing the thumb transversely just under the nail. Libelant contends principally that the door swung shut because a tension rod, which should have retarded the door's movement, was not in proper working order. Respondent suggests that the door was "* * * actuated into motion by libelant who, while holding onto the door knob with his left hand, was unable to retain his balance as the vessel pitched, and leaning backwards * * * pulled the door closed on his right thumb."[1]

Mr. Talton cried out in pain, awakening a roommate, John Nee, who came to his assistance and summoned the ship's doctor and nurse. Mr. Talton was removed to the ship's hospital where he remained until the afternoon of December 2, 1957. The ship docked in New York on the following day. Mr. Talton continued to Greenville, North Carolina, and was admitted to a hospital there where his thumb was fixed internally by means of a Kirschner wire. The wire was removed on January 4, 1958, and he was discharged from the hospital. Mr. Talton is presently unable to use this thumb because of a "flail joint," that is, a flexion deformity with lack of stability at the interphalangeal joint, and pain on motion of this joint. An obvious visual deformity is present; the thumb is unsightly. Libelant contends that the condition of his thumb is due to his shipboard accident, while respondent claims it is the result rather of an accident suffered in boyhood.

Libelant premises recovery on three theories; negligence, res ipsa loquitur and unseaworthiness, which will be dealt with in turn.

■ ■ It is clear that a vessel must observe a high degree of care to protect passengers from injury. Erdman v. United States, 143 F.2d 198, 200 (2 Cir. 1944). If, as Mr. Talton contends, the bathroom door had been permitted to swing freely because of a faulty mechanism, this duty might have been breached.[2] However, John Nee, who testified at the trial, stated that he "didn't find anything wrong" with the door during the voyage. He added that had the door swung backward and forward it would have disturbed his sleep and he would have complained to the ship's officers. It did not "swing as easy as a house door. If that had been the case there would have been no door left that night. There must be something holding it. * * *" Mr. Nee impressed me

---

1. Respondent's post-trial brief, pp. 8–9.

2. On the issue of respondent's negligence, there might still be the question of actual or constructive notice to respondent of the condition of the door mechanism.

as a man of probity and intelligence. He has no possible interest in the case and no motive to tell anything but the truth. See Hamilton v. Nassau, 131 F. Supp. 125, 127 (S.D.N.Y.1955). During the course of the voyage he had an excellent opportunity to observe the door in operation. The ship's log, Ex. O, shows that the ship encountered winds of strong gale force during the voyage. Despite the rough weather, Mr. Nee testified: "I would say there was no difference in the door from when I went on it in Southampton until I got off in New York. * * *" I conclude that libelant has not met his burden of proving by a fair preponderance of the credible evidence that the tension rod was not working properly at the time of the accident or that respondent breached its duty to furnish a door in good working order. Osipuk v. Oceanic Steam Nav. Co., 64 F. 2d 478 (2 Cir.1933).

Since I do not find that there was anything wrong with the door, it is unnecessary to evaluate the expert testimony offered by both sides as to the mechanism's inherent usefulness, or to discuss such issues as whether respondent's inspection system was adequate, and the effect of respondent's claimed posted notice in the cabin and in the ship's newspaper cautioning care in use of doors.

■■ Libelant also contends that recovery can be based on res ipsa loquitur. Although this doctrine may be applied in admiralty cases, Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L. Ed. 468 (1947), it would appear that its application here is not warranted by the facts. Creagh v. United Fruit Co., 178 F.Supp. 301 (S.D.N.Y.1959). Accidents of this type do occur without the negligence of anyone except the injured party. Further, although this may not be of controlling significance, respondent did not have exclusive control of the door.[3] The ship's joiner testified that

passengers sometimes decrease the tension on the rod by putting soap in the channel of the rod, while libelant's expert witness, William Finkenaur, testified that tension on the rod could be adjusted using a small blade of a pen knife or indeed with a fingernail. Ease of access to the tension mechanism, since I find that it was in good working order, is of no moment except to negative exclusive control. Finally, even if the doctrine did apply here, it permits but does not compel an inference of negligence. Johnson v. United States, supra, at 48, 68 S.Ct. 392.

■■ Libelant's third theory of liability is based upon the claimed unseaworthiness of the vessel. However, libelant cites no clear authority for extending the doctrine of unseaworthiness to passengers. I do not believe that the protection of this doctrine, on the present state of the law, can properly be applied to a passenger. Cf., Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 629, 79 S.Ct. 406, 3 L.Ed.2d 550 (1958) (seaman's invitee); see Vaci v. Swedish American Line, 200 F.Supp. 207 (E.D.Pa.1961) (passenger's claim for maintenance and cure). Moreover, even if that doctrine were to apply, I am unable to find on the credible evidence that libelant has proved that the mechanism supplied by the ship was not adequate for its intended purpose. Passengers, no more than seamen, are not entitled to an accident-proof ship.

Upon the entire case, I find that libelant has failed to sustain his burden of proving that respondent breached any duty to him, either on a negligence theory or on an unseaworthiness theory. Accordingly, the libel is dismissed.

The foregoing shall constitute the Court's findings of fact and conclusions of law. Sup.Ct.Adm.Rules, Rule 46½, 28 U.S.C.

Decree accordingly.

---

3. See Van Carpals v. The S. S. American Harvester, 297 F.2d 9, 11 (2 Cir. 1961); but cf. Prosser, On Torts 206 (2 ed. 1955), suggesting that the traditional idea of exclusive control as a test of applying the doctrine be "discarded altogether," quoted with approval in Great Eastern Fuel Co. v. Tanker Hygrade No. 26, Inc., 196 F.Supp. 342, 344 (E.D.N.Y.1961).